**MILLWEE–JACKSON JOINT VENTURE and Stephen M. Millwee, Appellants,**

v.

**DALLAS AREA RAPID TRANSIT and The City of Dallas, Appellees.**

No. 05–08–01164–CV.

Court of Appeals of Texas, Dallas.

Oct. 31, 2011.

Arthur J. Anderson, Winstead Sechrest & Minick, P.C., Dallas, for Appellants.

Harold R. McKeever, Dallas Area Rapid Transit, Dallas, Eric Wilder McNeil, Dwyer Law Firm, Rockwall, for Appellees.

Before Justices MOSELEY, BRIDGES, and FRANCIS.

## OPINION

Opinion By Justice BRIDGES.

The Court has before it the motion for rehearing of Millwee–Jackson Joint Venture and Stephen M. Millwee. On the Court's own motion, we withdraw our opinion and vacate our judgment of March 11, 2011. The following is now the opinion of the Court.

Millwee–Jackson Joint Venture and Stephen M. Millwee (Millwee) appeal the trial court's summary judgment in favor of Dallas Area Rapid Transit (DART) and the City of Dallas (the City) and order granting the City's plea to the jurisdiction. In eight issues, Millwee argues the trial court erred in (1) granting summary judgment in favor of DART on his restriction of access and nonconsensual possession of property causes of action; (2) granting summary judgment in favor of the City on the grounds that his regulatory takings claim was barred by the statute of limitations; (3) ruling that his declaratory judgment claims against the City were barred by sovereign immunity; (4) denying his claim for injunctive relief against the City; (5) dismissing his nuisance claims against DART and the City; (6) finding there was

no substantial impairment of his access to his property due to the City's closure of Alamo Street; and (7) dismissing two of his inverse condemnation claims against the City by pretrial motion. We reverse (1) the summary judgment in favor of DART on Millwee's claims that DART's physical occupation of his property constituted a taking; (2) the summary judgment in favor of the City on the grounds that Millwee's regulatory taking claims were barred by the statute of limitations; (3) summary judgment in favor of the City on Millwee's claims for an injunction; (4) summary judgment in favor of the City and DART on Millwee's nuisance claims; and (5) the trial court's judgment granting the City's plea to the jurisdiction on the grounds that Millwee's acquisitory intent and investment-backed expectations claims were contingent on a finding that access to Millwee's property was materially and substantially impaired. We remand this cause for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.

In 1981, Millwee purchased the subject property, a tract located in Dallas next to Interstate 35. An access easement allowed entry to the property, but the easement was in a floodplain and could be covered with water after rain. Millwee had a billboard on the property but intended to build a hotel or office building on the property. In order to access the property for commercial purposes, Millwee sought approval from the City to build a bridge crossing Turtle Creek at one end of the property and connect to a city street. Millwee entered into a purchase contract with Sebastiano Russoti, who intended to build a 300–room hotel on the property; however, the purchase did not close.

In February 1985, the City sent Millwee a letter stating the City had determined the actions required for the development of Millwee's property and setting forth the responsibilities of the City and Millwee. The required actions included the City dedicating a fifty-six foot right-of-way along Alamo Street north of the property, establishing a new alignment for Alamo Street, and abandoning those portions of the existing Alamo Street right-of-way no longer necessary for street purposes. Millwee's responsibilities included building a bridge over Turtle Creek, constructing Alamo Street, relocating landscaping and irrigation systems in the approved Alamo Street alignment, and providing a hike/bike path under the new bridge. Due to "delay by the City and the ensuing economic downturn," Millwee said he "missed the development cycle to construct a commercial building" on the property and was "forced to put [his] development plans on hold."

In 1998, Alamo Street was deleted from the City's master thoroughfare plan by the city council. In 2002, DART began construction activities near Millwee's property that resulted in a dirt embankment that, Millwee claimed, blocked access to his property. The City closed the portion of Alamo Street between Oak Lawn Avenue and the railroad bridge next to Millwee's property. DART placed "enormous quantities of dirt" in and beyond the area it had obtained through the City's abandonment of a portion of Alamo Street. DART also constructed temporary and permanent fencing that Millwee claimed encroached on his property. According to Millwee, DART and/or the City prevented physical or legal access from the property to a public street. Vehicles and pedestrians were required to trespass on adjacent properties to access Millwee's property. Although Millwee acknowledged that an access easement was executed at the City's behest, Millwee claimed "safe and reasonable access" was not available to his property.

In Millwee's fifth amended petition, the live pleading at trial, he sought a declaratory judgment that the City was required to approve his proposed bridge construction plans pursuant to "the condition in the approved and recorded final plat;" the City was required to keep open and maintain Alamo Street; the closure of Alamo Street violated City ordinances and state statutes; and, if Alamo Street was closed or abandoned without Millwee's consent, he was entitled to compensation in accordance with section 65.015 of the civil practice and remedies code; he and the public had the right to use Alamo Street from Oak Lawn Avenue to Houston Street; and if Alamo Street was closed or abandoned, he was entitled to ownership of Alamo Street from his property to Oak Lawn Avenue. In addition, Millwee raised nuisance, substantial impairment of access, and inverse condemnation claims and sought a permanent injunction preventing the City from taking any action to prevent him or visitors to his property from accessing his property from Oak Lawn Avenue and Houston Street via Alamo Street.

DART and the City each filed traditional and no-evidence motions for summary judgment. DART asserted Millwee could not recover on his inverse condemnation claim because DART did not deny Millwee access to his property; Millwee's tort claims against DART were barred by governmental immunity; Millwee's claims against the City under the Declaratory Judgments Act were barred because his true claim was for inverse condemnation, and his claim was barred by limitations; and Millwee was not entitled to injunctive relief against the City because Millwee did not allege or prove he would suffer irreparable injury without the injunction, he had no adequate remedy at law, or imminent harm would result without the injunction.

The City filed its second amended plea to the jurisdiction in October 2007 asserting Millwee's claims were all barred by sovereign immunity. The City asserted there was no evidence to support certain elements of Millwee's claims for injunctive relief, nuisance, substantial impairment of access, and inverse condemnation. Further, the City asserted Millwee's declaratory judgment and nuisance claims were barred by sovereign immunity; Millwee's substantial impairment of access and inverse condemnation claims were barred as "nothing more than complaints regarding 'diversion of traffic or circuity of travel' which do not result in a compensable taking" and limitations; and Millwee's claim for an injunction was barred because Millwee did not plead and could not meet the statutory and/or equitable grounds for the requested injunction, namely that imminent harm or irreparable injury would result if the injunction was not issued and the absence of an adequate remedy at law.

On December 6, 2007, the trial court granted summary judgment in favor of DART. On December 21, 2007, the trial court entered summary judgment in favor of the City and granted the City's plea to the jurisdiction, except with respect to Millwee's claim for inverse condemnation. The denial of the plea to the jurisdiction on the inverse condemnation claim was without prejudice to the reconsideration of the claim following a hearing to determine the extent to which the City had materially and substantially interfered with Millwee's access to the property.

Following the evidentiary hearing, the trial court entered final judgment ordering that Millwee take nothing on his inverse condemnation claims. Millwee requested that the trial court enter findings of fact and conclusions of law regarding the evidentiary hearing, and the trial court entered conclusions of law that: (1)

Millwee did not suffer a material and substantial deprivation of access to his property as a result of the closing of Alamo Street; (2) the trial court therefore lacked subject matter jurisdiction over Millwee's claims for inverse condemnation based on the closing of Alamo Street, including Millwee's claims couched in terms of acquisitory intent and/or interference with investment-based expectations; (3) as to Millwee's other claims, the trial court lacked subject matter jurisdiction over such claims and/or there were no genuine issues of material fact precluding summary judgment on such claims; and (4) there were no genuine issues of material fact raised with respect to any of Millwee's claims. This appeal followed.

## Standard of Review

In reviewing the trial court's decision to grant summary judgment, we apply well-known standards. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show the plaintiff has no cause of action. A defendant may meet this burden by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *See Kang v. Hyundai Corp.*, 992 S.W.2d 499, 501 (Tex.App.-Dallas 1999, no pet.).

When traditional and no-evidence motions for summary judgment are filed, we review the no-evidence summary judgment first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX.R. CIV. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Gen. Mills*, 12 S.W.3d at 833. When analyzing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *See Nixon*, 690 S.W.2d at 549 (traditional summary judgment); *Gen. Mills*, 12 S.W.3d at 833 (no-evidence summary judgment).

■ In his first issue, Millwee argues the trial court erred in granting DART's motion for summary judgment. Specifically, Millwee argues fact issues exist regarding the extent and length of time DART restricted his access to his property. Millwee claims his access easement was totally blocked in November 2002, April–June 2004, April 2007, and October–November 2007. During these times, Millwee's property could be accessed by traveling around DART's construction and trespassing over private property. However, Millwee argues this fact does not preclude a finding of material impairment.

■ Whether access to property has been materially and substantially impaired is a threshold question of law reviewed de novo. *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex.2008) (citing *City of San Antonio v. TPLP Office Park Props., L.P.*, 218 S.W.3d 60, 66 (Tex.2007)). In determining whether diminished value due to impaired access is compensable, we first look to whether other access points

remain after the taking and whether those access points are reasonable. *Dawmar*, 267 S.W.3d at 878 (citing *Archenhold Auto. Supply Co. v. City of Waco*, 396 S.W.2d 111, 114 (Tex.1965) (holding access not materially and substantially impaired when one access point was closed but another access point on a public street remained unaffected)).

■■■ The supreme court has rejected impairment of access claims based on speculative or hypothetical uses of remainder property. *Dawmar*, 267 S.W.3d at 879. Similarly, the degree of impairment of access is not evaluated in light of a property's highest and best use. *Id.* In *State v. Delany*, 197 S.W.3d 297 (Tex.2006), the court held that "while condemned property may be appraised at its highest and best use, remaining property on which there are no improvements and to which reasonable access remains is not damaged simply because hypothetical development plans may have to be modified." *Id.* at 300. Restrictions on access that result only in increased circuity of travel are not compensable. *Dawmar*, 267 S.W.3d at 880. Moreover, access is not materially and substantially impaired merely because other access points are significantly less convenient. *Id.* In *Dawmar*, the court reaffirmed that its determinations in *County of Bexar v. Santikos*, 144 S.W.3d 455 (Tex. 2004) and *Delany* "neither held nor implied that lack of access to an arterial road established impairment of access as a matter of law." *Dawmar*, 267 S.W.3d at 880.

■■■ A partial, temporary disruption of access to property is not sufficiently "material and substantial" to constitute a compensable taking. *State v. Bristol Hotel Asset Co.*, 293 S.W.3d 170, 173 (Tex. 2009). "Disruption of use due to construction activities" of a condemning authority during a roadway expansion project are not compensable. *Id.*

Here, the evidence showed the property at issue had been used for the placement of billboards since Millwee purchased the property. The record shows the billboard companies were always able to service their billboards, though for some period of time they had to enter adjoining property to access Millwee's property. At the time Millwee purchased the property, the only access was via an easement located in a flood plain that could be covered with water after rain. Other than entering through adjoining property, this remains the sole access to Millwee's property. There is no evidence that Millwee's access easement is currently blocked, and the closing of Alamo Street has not prevented Millwee from using his access easement. Based on this evidence we conclude the evidence failed to establish, as a matter of law, that Millwee suffered a material and substantial deprivation of access to his property. *See Dawmar*, 267 S.W.3d at 880; *Bristol Hotel*, 293 S.W.3d at 173. Accordingly, the trial court did not err in concluding Millwee presented no evidence that he suffered a material restriction of access. *See Dawmar*, 267 S.W.3d at 880; *Bristol Hotel*, 293 S.W.3d at 173. A no-evidence summary judgment was therefore proper in favor of DART on Millwee's restriction of access cause of action. *See Nixon*, 690 S.W.2d at 549; *Gen. Mills*, 12 S.W.3d at 833.

■ In his second issue, Millwee asserts DART did not specify grounds in its motion for summary judgment explaining why DART's physical possession of the property did not constitute a taking and did not address Millwee's cause of action for a taking based on DART's possession of the "Access Drive and the remainder of the Property for construction and staging." Millwee argues that, without his consent, DART used his property for truck traffic and as a staging area for construction

activities. DART's motion for summary judgment asserted that DART did not deny Millwee access to his property, access had been and continued to be provided, and a circuity of travel claim is not actionable. DART did not address Millwee's claim that DART physically occupied portions of his property and his access easement without his consent, and this physical occupation constituted a taking. A party may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. *Espeche v. Ritzell,* 123 S.W.3d 657, 663 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (citing *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983)). Thus, we conclude the trial court erred in granting summary judgment on Millwee's claims that DART's physical occupation of parts of Millwee's property amounted to a taking. *See Espeche,* 123 S.W.3d at 663. We sustain Millwee's second issue.

 In his third issue, Millwee argues the trial court erred in granting the City's and DART's traditional and no-evidence motions for summary judgment on the grounds that limitations barred his regulatory takings claims against the City and his declaratory judgment claim against DART. Millwee argues his regulatory takings claims were not ripe for adjudication until 2002. There is no specific statute of limitations for an inverse condemnation claim. *Maguire Oil Co. v. City of Houston,* 69 S.W.3d 350, 358 n. 4 (Tex. App.-Texarkana 2002, pet. denied). However, courts have held the ten-year period of limitations to acquire land by adverse possession applies. *Id.; Trail Enters., Inc. v. City of Houston,* 957 S.W.2d 625, 631 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). The Texas Supreme Court recognized this in *Hallco Texas, Inc. v. McMullen County,* 221 S.W.3d 50, 74 (Tex.

2006). When a defendant's conduct produces a legal injury, however slight, the cause of action accrues and the statute of limitations begins to run. *Seureau v. ExxonMobil Corp.,* 274 S.W.3d 206, 226 (Tex. App.-Houston [14th Dist.] 2008, no pet.). A regulatory taking occurs if (1) the governmental regulations deprive a property owner of all economically viable use of the property or totally destroys the property's value or (2) the governmental restrictions unreasonably interfere with a property owner's rights to use its property. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 933 (Tex.1998).

Here, the record shows Millwee purchased the property in 1981, at which time it had access solely via an easement in a floodplain. Millwee attempted to secure financing to build a hotel on the property, and he sought approval from the City to build a bridge connecting the property to a City street. At first, the City notified Millwee it would not allow access where Millwee's proposed driveway was located because it was on Park Department property. In January 1985, Millwee notified the City by letter that he was "in the posture of having [his] property inversely condemned" if he could not proceed with construction of the bridge to give him access to the building site. In February 1985, the City sent Millwee a letter setting forth the requirements for going forward with the development plan, including Millwee's responsibility for constructing a bridge over Turtle Creek, subject to review and approval. As Millwee points out in his brief, this was the "last official action by the City of Dallas."

 After receiving the letter, Millwee did not build a bridge over Turtle Creek giving him access to the property. Nevertheless, Millwee argues his claim was not ripe for purposes of limitations until either Alamo Street was closed in

2002 or the City refused to accept his plans for bridge construction on July 23, 2007. We agree. A claim is ripe if the facts involved demonstrate that "an injury has occurred or is likely to occur." *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex.1998). A case is not ripe for adjudication when "determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex.2000).

In 1985, the City sent Millwee a letter containing an alternative development plan whereby Millwee might be permitted to build a bridge across Turtle Creek at his own expense, subject to review and approval. This letter was, as Millwee argues, the City's "last official action" with respect to the bridge. Thus, the City's last action was conditional permission for Millwee to construct a bridge to his property at his expense. Rather than relating back to the discussions in 1985, Millwee's complaints in the underlying suit focused on the closure of Alamo Street in 2002, and subsequent construction activities that blocked access to his property and physically occupied portions of his property. Accordingly, we conclude the ten-year statute of limitations did not preclude Millwee's regulatory taking claims. *See Trail Enters.*, 957 S.W.2d at 631. Thus, the trial court erred in granting summary judgment in favor of the City on the grounds that Millwee's regulatory taking claims were barred by the statute of limitations. *See Nixon*, 690 S.W.2d at 548–49; *Gen. Mills*, 12 S.W.3d at 833. We sustain Millwee's third issue. As to DART, Millwee does not dispute the trial court's denial of his declaratory judgment action against DART.

In his fifth issue, Millwee argues the trial court erred in granting the City's motions for summary judgment on Millwee's claims for an injunction. Again, Millwee acknowledges he is not seeking an injunction against DART. Section 65.011(1) of the civil practice and remedies code provides that an injunction may be granted if the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant. TEX. CIV. PRAC. & REM.CODE ANN. § 65.011(1) (West 2008). Section 65.015 provides that an injunction may not be granted to stay or prevent the governing body of a city from vacating, abandoning, or closing a street except on the suit of a person who is the owner or lessee of real property abutting the part of the street vacated, abandoned, or closed; and whose damages have neither been ascertained and paid in a condemnation suit nor released. TEX. CIV. PRAC. & REM.CODE ANN. § 65.015 (West 2008).

Section 65.011 does not permit injunctive relief without the showing of irreparable harm otherwise required by equity. *Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex.2001). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). That is, the applicant has to establish there is no adequate remedy at law for damages. *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex.App.-Houston [1st Dist.] 2003, no pet.). An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Id.*

The record contains Millwee's affidavit stated Alamo Street was closed in November 2002 from the railroad bridge to Oak Lawn and remained closed since that time.

Without access to Alamo Street, the affidavit stated, Millwee's property had "no commercial development use or market value (other than the existing billboards)." The affidavit further stated the property, with the right to access Alamo Street, had a market value of approximately $2,848,800 in November 2002 and approximately $4,898,322 as of November 2007. Millwee reiterated that he was irreparably harmed because he could not develop or sell the property without an open and functional Alamo Street. We conclude this evidence created a fact issue whether Millwee has suffered irreparable harm and has no adequate remedy at law. *See Palm Valley,* 87 S.W.3d at 111; *Butnaru,* 84 S.W.3d at 204; *Stein v. Killough,* 53 S.W.3d 36, 44 (Tex. App.-San Antonio 2001, no pet.) (property owner's testimony regarding market value some evidence to show imminent harm and irreparable injury). Thus, the trial court erred in granting summary judgment in favor of the City on the grounds that Millwee was not entitled to injunctive relief. *See Nixon,* 690 S.W.2d at 548–49. We sustain Millwee's fifth issue.

### Sovereign Immunity

■ Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the State or certain governmental units have been sued unless the State consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004) (citing *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999)). Sovereign immunity includes two distinct principles: immunity from suit and immunity from liability. *Miranda,* 133 S.W.3d at 224. Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject-matter jurisdiction. *Id.*

■ Sovereign immunity does not shield the State from an action for compensation under the takings clause. *Gen. Servs. v. Little–Tex Insulation,* 39 S.W.3d 591, 598 (Tex.2001). To establish a takings claim, one must prove (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Little–Tex,* 39 S.W.3d at 598. As Millwee argues, property has been damaged for a public use within the meaning of the Constitution when access is materially and substantially impaired even though there has not been a deprivation of all reasonable access. *City of San Antonio v. Olivares,* 505 S.W.2d 526, 530 (Tex. 1974).

■ In his seventh issue, Millwee argues the trial court erred in concluding the City's closing Alamo Street did not result in a substantial impairment of access. We have already determined Millwee did not suffer a material and substantial deprivation of access to his property. *See Dawmar,* 267 S.W.3d at 880; *Bristol Hotel,* 293 S.W.3d at 173. Millwee argues the City's closing of Alamo Street substantially deprived him of access to his property because it prevented him from building a bridge across Turtle Creek. As previously noted, the supreme court has rejected impairment of access claims based on speculative or hypothetical uses of remainder property. *Dawmar,* 267 S.W.3d at 879. Similarly, the degree of impairment of access is not evaluated in light of a property's highest and best use. *Id.* Thus, the fact that closing Alamo Street may have prevented the construction of a hypothetical bridge does not establish a material and substantial deprivation of access to Millwee's property. Accordingly, the trial court properly granted the City's plea to the jurisdiction on Millwee's substantial impairment of access claim. *See id.; Little–Tex,* 39 S.W.3d at 598. We overrule Millwee's seventh issue.

■ In his eighth issue, Millwee argues the trial court erred in concluding the disposition of his acquisitory intent and deprivation of investment-backed expectations claims against the City were contingent on the court's ruling on the substantial impairment of access issue. Specifically, Millwee points out that the trial court, at the hearing on the substantial impairment of access issue, stated the hearing was not for the purposes of determining Millwee's acquisitory intent or investment-backed expectations issues. The trial court stated "neither acquisitory intent nor investment-backed expectation[s] in and of themselves give rise to a cause of action unless there's been a taking. And in this instance, insofar as the Court can determine, the only plausible theory of the taking is the material and substantial impairment of access through the closing of Alamo Street."

In support of his argument, Millwee cites to the record where he presented evidence that (1) the City wants to acquire his property for a park, trail connection, or highway and (2) the City was aware or should have been aware that the closure of Alamo Street would suppress Millwee's property value. Millwee argues fact issues exist regarding his acquisitory intent and investment-backed expectations claims, and these claims were not contingent on a finding of a substantial impairment of access. Millwee further points out that DART's and the City's motions for summary judgment and the City's plea to the jurisdiction did not address these claims. Because neither DART nor the City addressed Millwee's acquisitory intent and investment-backed expectations claims, it appears the sole basis for the trial court's rejection of these claims was its determination that they required a showing of material and substantial impairment of access.

■ The constitutionality of a regulatory taking involves the consideration of a number of factual issues, but the ultimate question of whether the facts are sufficient to constitute a taking is a question of law. *See Mayhew*, 964 S.W.2d at 933; *Rowlett/2000, Ltd. v. City of Rowlett*, 231 S.W.3d 587, 590 (Tex.App.-Dallas 2007, no pet.). Millwee's "acquisitory intent" claim refers to a situation in which "the government's action against an economic interest of an owner is for its own advantage." *City of Austin v. Teague*, 570 S.W.2d 389, 393 (Tex.1978); *see also State v. Biggar*, 873 S.W.2d 11, 14 (Tex.1994) (when State takes action specifically designed to decrease value required to acquire part of landowner's property by power of eminent domain and simultaneously damages entire tract's value, landowner may recover). Millwee's "investment-backed expectations" claim refers to one factor in the regulatory taking analysis first explained in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) and more recently restated as an analysis considering (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the government action. *Sheffield Dev. v. City of Glenn Heights*, 140 S.W.3d 660, 672 (Tex.2004).

Thus, while both these claims involve a takings analysis, they are based on claims distinct from a taking analysis seeking to determine whether a taking has occurred because access to property has been materially and substantially impaired. *Compare Biggar*, 873 S.W.2d at 14 (taking based on acquisitory intent), *and Sheffield*, 140 S.W.3d at 672 (investment-backed expectations a factor in taking analysis), *with Dawmar*, 267 S.W.3d at 878–79 (taking arising from material and substantial im-

pairment of access). Accordingly, the trial court erred in holding that the disposition of Millwee's acquisitory intent and investment-backed expectations claims was contingent on the court's ruling favorably on the substantial impairment of access issue. We sustain Millwee's eighth issue.

In his sixth issue, Millwee argues the trial court erred in granting summary judgment in favor of the City and DART on his nuisance claims on the grounds the City and DART did not intentionally take his property rights. Millwee claimed the City's "actions constitute a non-negligent nuisance with past and on-going injury" to Millwee's property and prevented Millwee from making "higher and/or better use" of the property. A city's nuisance liability arises only when sovereign immunity is clearly and unambiguously waived. *City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex.2004). A city may be held liable for a nuisance that rises to the level of a constitutional taking. *Id.* When a governmental entity physically damages private property in order to confer a public benefit, that entity may be liable under Article I, Section 17 of the Texas Constitution if it (1) knows that a specific act is causing identifiable harm or (2) knows that the specific property damage is substantially certain to result from an authorized government action—that is, that the damage is necessarily an incident to, or necessarily a consequential result of the government's action. *Id.* at 314. In this case, we have already concluded that summary judgment was improper on Millwee's claims that DART's physical occupation of his property constituted a taking, Millwee's regulatory taking claims against DART and the City are not barred by limitations, and Millwee's acquisitory intent and investment-backed expectations claims against the City are still viable causes of action. With certain of Millwee's

regulatory taking claims against DART and the City thus unresolved, we conclude a fact issue exists whether the alleged nuisance in this case rose to the level of a constitutional taking. *See id.* at 314–316. We sustain Millwee's sixth issue.

In his fourth issue, Millwee argues the trial court erred in ruling that his declaratory judgment claims against the City were barred by sovereign immunity. A party cannot circumvent the State's sovereign immunity from suit by characterizing a suit for monetary damages as a declaratory judgment action. *City of Dallas v. Blanton*, 200 S.W.3d 266, 280 (Tex. App.-Dallas 2006, no pet.). If the suit attempts to subject the State to liability, the sovereign immunity doctrine is implicated. *Id.*

Whether a court has subject-matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226. A plea to the jurisdiction can be based on the pleadings or on evidence. *Id.* When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Id.* at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228.

Here, Millwee sought a declaration that, among other things, the denial of his plans for a bridge and the closure of Alamo Street entitled him to compensation. Thus, the claims in Millwee's declaratory judgment action seek monetary compensation for basically the same claims presented elsewhere as inverse condemnation claims. We conclude Millwee's declaratory

judgment claim against the City is an attempt to characterize a suit for money damages as a declaratory judgment action and is barred by sovereign immunity. *See Blanton,* 200 S.W.3d at 280. We overrule Millwee's fourth issue.

We reverse (1) the summary judgment in favor of DART on Millwee's claims that DART's physical occupation of his property constituted a taking; (2) the summary judgment in favor of the City on the grounds that Millwee's regulatory taking claims were barred by the statute of limitations; (3) summary judgment in favor of the City on Millwee's claims for an injunction; (4) summary judgment in favor of the City and DART on Millwee's nuisance claims; and (5) the trial court's judgment granting the City's plea to the jurisdiction on the grounds that Millwee's acquisitory intent and investment-backed expectations claims were contingent on a finding that access to Millwee's property was materially and substantially impaired. We remand this cause for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.