**AFFIRM; Opinion Filed April 4, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00278-CV

## CITY OF DALLAS, Appellant
## V.
## MILLWEE-JACKSON JOINT VENTURE AND
## STEPHEN M. MILLWEE, Appellees

On Appeal from the 101st Judicial District Court
Dallas County, Texas
Trial Court Cause No. 04-07287-E

### MEMORANDUM OPINION
Before Justices Moseley, Lang, and Brown
Opinion by Justice Moseley

This is an interlocutory appeal from an order denying the City's plea to the jurisdiction

following a remand in a prior appeal. *See Millwee-Jackson Joint Venture v. Dallas Area Rapid*

*Transit*, 350 S.W.3d 772 (Tex. App.—Dallas 2011, no pet.).[1]  In a single issue, the City argues

the trial court erred by denying its amended second plea to the jurisdiction because the City

established it was immune from Millwee's inverse condemnation and other claims.  The

background of the case and the evidence adduced at trial are well known to the parties; thus, we

do not recite them here in detail.  Because all dispositive issues are settled in law, we issue this

---

[1] In *Millwee*, we affirmed the trial court's summary judgment on Millwee's impaired access claim. Millwee did not appeal our judgment and nothing in this opinion alters our prior decision on Millwee's claim for material and substantial impairment of access to his property. *See Millwee-Jackson*, 350 S.W.3d at 780, 783.

memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

Viewing the evidence in the light most favorable to Millwee, we conclude there are fact issues regarding his jurisdictional allegations supporting his claims for inverse condemnation, injunction, and nuisance. These factual disputes must be resolved by the trier of fact. Accordingly, we affirm the trial court's order.

## BACKGROUND

Millwee purchased the property near Interstate 35 and Oak Lawn Avenue in 1981. A billboard was located on the property, but Millwee intended to build a hotel or office building there. In 1982, Millwee entered into a purchase contract with a developer who proposed to build the hotel. To provide access to the property for commercial development, Millwee sought City approval for a bridge over Turtle Creek to connect to Alamo Street, which in turn connected to Oak Lawn Avenue.

The contract with the developer did not close, allegedly because the City delayed approving the bridge plans. However, Millwee continued to seek approval of a bridge to Alamo Street in order to allow the property to be developed. Millwee alleged he submitted a plat to the City anticipating a vehicular bridge connection from Alamo Street across Turtle Creek to the property. In 1983, the City approved the plat of the property with a note that the public works department would review any plans for additional access on further development of the property.

In February 1985, the City sent a letter to Millwee outlining the actions and responsibilities of the parties required for approval of the bridge. According to Millwee, however, the City's delays and the economic downturn caused him to miss the development cycle to construct a commercial building on the property and he put his development plans on hold. He alleged his reasonable investment-backed expectations were still to develop the property with a commercial structure when the market for development rebounded.

After 1985, Millwee received inquiries to purchase the property and he expected the property would be developed or sold for a commercial building. In 1998, without Millwee's knowledge, the City deleted Alamo Street from its master thoroughfare plan. In 2002, DART began construction on the light rail running near Millwee's property. Also in 2002, in response to inquiries from potential commercial tenants, Millwee hired an engineer to prepare a concept site plan for a high rise office building on the property. However, the City closed the portion of Alamo Street between Oak Lawn Avenue and the railway bridge near Millwee's property in November 2002.

Millwee filed this lawsuit in 2004 and later added claims for inverse condemnation, an injunction, and nuisance. In 2007, Millwee submitted and the City rejected a permit application for the construction of the bridge as described in the City's February 1985 letter to Millwee.

The trial court granted motions for summary judgment and a plea to the jurisdiction in favor of the City. In a previous appeal, this Court affirmed in part and reversed and remanded in part. *See Millwee-Jackson*, 350 S.W.3d at 777, 786. On remand, the City amended its plea to the jurisdiction to specifically address Millwee's inverse condemnation, injunction, and nuisance claims. The trial court denied the plea to the jurisdiction and the City appeals that ruling.

### STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a trial court has subject matter jurisdiction is a question of law to be reviewed de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). In performing this review, we do not look to the merits of the plaintiff's case, but consider only the pleadings and any evidence presented by the parties pertinent to the jurisdictional inquiry. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *County of Cameron v.*

–3–

*Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

Where, as here, the City's plea challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam); *City of Dallas v. Brooks*, 349 S.W.3d 219, 224–25 (Tex. App.—Dallas 2011, no pet.). After a governmental entity presents evidence that the trial court lacks subject matter jurisdiction, the plaintiff must show there is a disputed material fact regarding the jurisdictional issue. *See Miranda*, 133 S.W.3d at 228. If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Hayes*, 327 S.W.3d at 116. On the other hand, if the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Id.*; *see also Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012), *cert. denied*, 133 S. Ct. 1999, 185 L. Ed. 2d 867 (U.S. 2013). In reviewing the trial court's ruling, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228.

## INVERSE CONDEMNATION

Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly raised by a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26. However, governmental immunity from suit does not shield the government from an action for compensation under the takings clause. *Gen. Services Com'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598-99 (Tex. 2001); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980) ("The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use."). Article I, section 17 of the Texas Constitution guarantees that "[n]o person's

property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made." TEX. CONST. art. I, § 17.

Inverse condemnation occurs when property is taken for public use without proper condemnation proceedings and the property owner attempts to recover compensation for that taking. *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex. 1971). To state a cause of action for inverse condemnation under the Texas constitution, a plaintiff must allege (1) an intentional governmental act; (2) that resulted in his property being taken, damaged, or destroyed; (3) for public use. *Little–Tex*, 39 S.W.3d at 598.

The United States Supreme Court and the Texas Supreme Court have recognized several theories of regulatory takings. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538–539 (2005); *Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 838–40 (Tex. 2012); *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 669–72 (Tex. 2004); *State v. Biggar*, 873 S.W.2d 11, 13 (Tex. 1994); *City of Austin v. Teague*, 570 S.W.2d 389, 393 (Tex. 1978); *City of Sherman v. Wayne*, 266 S.W.3d 34, 42–44 (Tex. App.—Dallas 2008, no pet.). Two such theories are involved in this case.

Under the first theory, the Texas Supreme Court has said, "We recognize a cause of action for inverse condemnation where the government acts to gain an unfair advantage 'against an economic interest of an owner.'" *Biggar*, 873 S.W.2d at 13; *see Teague*, 570 S.W.2d at 393 (one test for inverse condemnation "allows recovery of damages when the government's action against an economic interest of an owner is for [the government's] own advantage"). Our constitution requires that landowners receive just compensation if their property is taken, damaged, or destroyed by the government for a public purpose. *Biggar*, 873 S.W.3d at 14. "If government is able to use its power as sovereign to adjust the value of 'just compensation,' the constitutional protection is rendered meaningless. . . . In such a world, government 'can no

longer pretend to be acting as a neutral arbiter . . . Instead, it has placed a heavy governmental thumb on the scales to insure that in the forthcoming dispute between it and one, or more, of its citizens, the scales will tip in its own favor.'" *Id.* (citations omitted). The parties refer to this theory as an "aquisatory intent" theory. We discuss this theory under the heading unfair advantage.

Under the second theory of regulatory taking, governmental action may constitute a taking necessitating compensation if, under an "essentially ad hoc, factual inquir[y]," the government action unreasonably interferes with a landowner's use and enjoyment of the property. *See Sheffield*, 140 S.W.3d at 671–72 (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). (This type of alleged regulatory taking is known as a *Penn Central* claim.) Determining whether the government has unreasonably interfered with a landowner's right to use and enjoy property requires a consideration of several factors including: (1) the economic impact of the regulation; (2) the extent to which the regulation interferes with the owner's distinct investment-backed expectations; and (3) the character of the governmental action. *Sheffield*, 140 S.W.3d at 672; *Mayhew*, 964 S.W.2d at 935–36; *Wayne*, 266 S.W.3d at 43–44. These factors, however, are not a formulaic test. *Sheffield*, 140 S.W.3d at 672. No single factor is determinative; they must be evaluated together along with any other relevant consideration. *Edwards Aquifer*, 369 S.W.3d at 840. The parties refer to this regulatory taking theory as an "investment-backed expectations" claim, and focus on this single *Penn Central* factor.

### 1. Unfair Advantage

Millwee alleged the City sought to obtain an unfair advantage against his economic interest for the City's benefit on two projects: Project Pegasus and the Connection. Project Pegasus is a project to widen Interstate 35E near downtown Dallas and the Connection is a plan

to connect the Katy Trail and Trinity Strand Trail near Millwee's property.

Millwee contends that in order to widen Interstate 35E, the Texas Department of Transportation (TXDOT) will be required to acquire a portion of Stemmons Park from the City. Federal and state law require the City to mitigate the impact of the loss of the park land by acquiring additional park land. Millwee argues his property is the closest available property from which the City could acquire land to replace the lost park land and the City has prevented him from developing his property in order to reduce the City's cost of acquiring that property in the future.

The City argues that Project Pegasus is not a City project and the City is not acquiring any property under that project. Citing *Hearts Bluff*, the City argues it cannot be liable for inverse condemnation because TXDOT is a separate governmental entity. *See Hearts Bluff*, 381 S.W.3d at 483–87. But this misses the point; Millwee's argument is more nuanced. Millwee contends that TXDOT will acquire park land from the City as part of Project Pegasus. In turn, the City will have to mitigate the loss of that park land by acquiring part of his property for use as additional park land. *See* 49 U.S.C. § 303(c) (section 4(f) of the Department of Transportation Act of 1966); TEX. PARKS & WILD. CODE ANN. §§ 26.001–.004. Millwee asserts the City is preventing development on his property in order to lessen its future acquisition costs.

Millwee also alleged that the draft environmental assessment for Project Pegasus stated the preferred mitigation was the acquisition of vacant land immediately south of Stemmons Park and his property is the only vacant land in the area. The City counters that the final Section 4(f) Evaluation for Project Pegasus[2] does not expressly mention this option. However, the mitigation

---

[2] A Section 4(f) Evaluation refers to a report prepared to satisfy the requirements of Section 4(f) of the Department of Transportation Act of 1966 (now 49 U.S.C. § 303). This section prohibits the Secretary of Transportation from approving projects that require use of public park land unless a determination is made that there is no feasible and prudent alternative and the project includes all possible planning to minimize the harm to the property resulting from the use.

–7–

plan in the final evaluation states the City is obligated to acquire additional park land:

> The City of Dallas is bound by Chapter 26 of the Texas Parks and Wildlife Code to utilize proceeds from the sale of the park land for the acquisition of additional park land, which will be subject to the approval of the Parks and Recreation Board and the City Council.

Thus, the final evaluation does not preclude the City from acquiring Millwee's property in satisfaction of this obligation.

Regarding the Connection, Millwee contends the City knew an open Alamo Street was necessary to his development plans and had conditionally approved his building of a bridge connecting to Alamo Street. Despite this, the City, in order to benefit itself and facilitate the Connection project, closed Alamo Street to vehicular traffic between Oak Lawn Avenue and Turtle Creek and has no plans to reopen Alamo Street. Thus, Millwee contends the City has acted unfairly against his economic interest because commercial development of his property would interfere with the City's plans for the Connection.

The City argues the Trail Connection Master Plan adopted in 2011 identifies a trail connection that does not cross or touch Millwee's property. A diagram of the connection in the Master Plan seems to show the trail connection at Alamo Street north of Turtle Creek and across from Millwee's property. The record is not well developed as to the status of Alamo Street and the City's intentions regarding the street. But Millwee alleged that vehicular traffic on Alamo Street interferes with the City's plans for the Connection and that City employees have stated the City will not approve commercial development on Millwee's property due to the condition of Alamo Street and the proposed construction of the Connection. Thus, the fact that the approved connection does not cross Millwee's property does not negate Millwee's jurisdictional allegations.

The City's last official action was conditional permission for Millwee to construct a bridge across Turtle Creek to Alamo Street at his own expense. *See Millwee-Jackson*, 350

–8–

S.W.3d at 782. With the closing of Alamo Street in 2002, the City has stymied Millwee's plans to develop his property because the bridge will no longer connect to an open Alamo Street. Without Alamo Street, the proposed bridge is nothing more than a bridge to nowhere.

### 2. Investment-backed Expectations

Millwee contends the City has unreasonably interfered with his distinct investment-backed expectations. The City argues that as a matter of law, Millwee can have no reasonable expectation to develop his property because he took no action to build the bridge after 1985 until he submitted an application in 2007, five years after the City closed Alamo Street and three years after he filed this lawsuit. The City also contends Millwee's offer to donate the property to the City as a charitable gift in April 2002 before the City closed Alamo Street shows he had no expectation to develop the property.

Millwee alleged the property was zoned for commercial use and he purchased the property with the expectation that he would be able to develop the property with a commercial building. Soon after he purchased the property, he entered into a contract to sell the property for development of a 300-room hotel. The contract did not close, allegedly because of the City's delays in approving plans for construction of the bridge over Turtle Creek to Alamo Street. There is evidence Millwee hired engineers several times over the years to prepare plans for different commercial developments on the property. Millwee contends development would require a bridge over Turtle Creek to an open Alamo Street to connect to Oak Lawn Avenue. In 2002, before the City closed Alamo Street, Millwee hired an engineer to prepare plans for an office building. The City does not dispute these allegations.

Millwee also presented evidence that the offer to give the property to the City was in connection with an attempt to resolve a dispute over sign code violations and the City did not accept the offer.

Millwee alleged facts supporting his investment-backed expectations regarding the property. The City merely argues the lapse of time renders any expectation of commercial development unreasonable. While the lapse of time may be one of several factors to consider in determining reasonableness, it is not exclusive. Moreover, the lapse of time is not conclusive as to whether Millwee's asserted expectation of developing the property was reasonable in 2002. We cannot say on this record that Millwee's expectations are unreasonable as a matter of law. Indeed, we recognized in our prior opinion that Millwee's claims did not accrue until the City closed Alamo Street in 2002. *See Millwee-Jackson*, 350 S.W.3d at 782.

In addition, no single *Penn Central* factor is determinative; all three must be evaluated together, as well as any other relevant considerations. *Edwards Aquifer*, 369 S.W.3d at 840. Yet, the City challenges only the investment-backed expectations factor. This factor must be evaluated by the trial court along with the economic impact of the regulation and the character of the governmental action, as well as any other relevant consideration, to determine whether there has been a regulatory taking. In doing so, the fact finder will be required to resolve several fact issues raised by Millwee's jurisdictional allegations regarding these factors.

### 3. *Westgate*

The City raises an additional argument against Millwee's inverse condemnation claim. Citing *Westgate, Ltd. v. State*, 843 S.W.2d 448, 450 (Tex. 1992), the City argues the closing of Alamo Street cannot result in a regulatory taking because that act does not physically appropriate, deny access to, or otherwise directly restrict the use of Millwee's property. In *Westgate*, the highway department approved the landowners plat for developing a shopping center without disclosing plans to expand a nearby highway. *Id.* When construction was nearly complete, the highway department announced the plan and began condemnation proceedings to take part of the developer's property. The developer counterclaimed for additional damages

arguing the announcement of the plan interfered with his ability to lease the shopping center. The developer sought to recover his lost profits for the three-year period between the announcement of the plan and the actual acquisition of his property. *Id*. at 450–51. The supreme court concluded that the mere announcement of a future plan to condemn property was not a taking or damaging of the property because it directly restrict the use of the property. *Id.* at 452–53. A direct restriction "refers to an actual physical or legal restriction on the property's use, such as a blocking of access or denial of a permit for development." *Id.* at 452.

Here, Millwee alleged and the City does not dispute that commercial development of Millwee's property would require a bridge across Turtle Creek to Alamo Street, which connects to Oak Lawn Avenue. And as we recognized in our prior opinion, the City's last official act was conditional permission for Millwee to build that bridge at his expense. *Millwee-Jackson*, 350 S.W.3d at 782. Millwee contends an open Alamo Street is necessary for development of the property and closure of Alamo Street directly restricts the use of Millwee's property. There is evidence that Millwee hired an engineer prepare plans for a commercial development on the property in 2002 before the City closed Alamo Street. Moreover, there is evidence the City has refused to act on Millwee's application to build to build the bridge and that City employees have told Millwee the City will not approve commercial development of his property because of the condition of Alamo Street and the proposed construction of the trail connection.

Millwee's jurisdictional allegations and evidence raise fact issues about the City's actions and whether they result in a direct restriction on the use of his property. Whether the City's action rises to the level of a regulatory taking requires resolution of several disputed facts necessary for application of the legal principles necessary to establish a regulatory takings claim.

### 4.      Conclusion

Although the ultimate determination of whether facts amount to a taking is a question of

law, we rely on trial courts to resolve disputed issues of fact regarding the extent of the governmental intrusion on the property. *See Sheffield*, 140 S.W.3d at 673; *Wayne*, 266 S.W.3d at 43; *see also City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 646 (Tex. 2013) (reversing summary judgment and remanding factual disputes about extent of government's interference with owner's use and enjoyment of property). Where the evidence raises fact questions on jurisdiction, the trial court cannot grant a plea to the jurisdiction; the fact issues must be resolved by the trier of fact. *See Hayes*, 327 S.W.3d at 116.

Applying the appropriate standard of review, we conclude the City has not met its burden of producing evidence that negates the jurisdictional facts alleged by Millwee regarding the inverse condemnation claim.

## INJUNCTION

Millwee seeks an injunction under civil practice and remedies code section 65.015. That section prohibits an injunction "to stay or prevent" a city from closing a street except in a suit by a person who is the owner of property abutting the part of the street closed and whose damages have not been ascertained and paid in a condemnation suit or released. TEX. CIV. PRAC. & REM. CODE ANN. § 65.015. In the prior appeal, we concluded Millwee presented some evidence irreparable harm that precluded summary judgment on his injunction claim. *See Millwee-Jackson*, 350 S.W.3d at 783. The City's plea to the jurisdiction argues section 65.015 does not allow a mandatory injunction to reopen Alamo Street and Millwee's claim is therefore moot and that Millwee's property does not abut Alamo Street.

The City argues the statute does not permit the injunction Millwee seeks—ordering the City to reopen Alamo Street. In effect, the City contends that if it closes a street before an injunction suit is filed, it is fait accompli and abutting landowners have no remedy. The City cites no authority for this proposition other than the language of the statute, which refers to an

–12–

injunction to stay or prevent a city from closing a street. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.015. The City also recasts this argument by asserting Millwee's claim for an injunction is moot.

Although in circumstances different from this case, the supreme court has affirmed a mandatory injunction requiring a city to remove a permanent barricade closing a street. *See Dykes v. City of Houston*, 406 S.W.2d 176, 183–84 (Tex. 1966).[3] In *Dykes*, abutting landowners filed suit seeking a mandatory injunction against the city commanding it to remove a barricade previously erected by the city across a street. *Id.* at 178. The supreme court described the predecessor to section 65.015 as "requir[ing] that where the rights of abutting owners are involved, the City must, before vacating, abandoning, or closing a street, obtain a release or condemn the property to be effected." *Id.* at 179–80. The court affirmed the trial court's granting of a mandatory injunction to remove the barricade even though the city had closed the street before the suit for injunction was filed.

Further, the supreme court recognized that a home-rule city's statutory right to vacate, abandon, or close streets and alleys is subject to the requirements of section 65.015, "which allows abutting owners to enjoin such action if they have not released any claim for damages they might have or have not been paid compensation through a condemnation proceeding." *Dykes*, 406 S.W.2d at 181. While an abutting landowner does not have the right to determine when a street will be opened by the public, *id.* at 182, the landowner retains rights under section 65.015 and the constitution.

The City contends Millwee's property does not abut Alamo Street because Alamo Street was never dedicated as a public street, thus there is no dedicated right-of-way for Millwee's

---

[3] We do not imply that Millwee obtained a private easement over Alamo Street by purchasing the property with reference to a map or plat showing Alamo Street abutting his property. *See Dykes*, 406 S.W.2d at 181. The record does not contain evidence regarding such a map or plat.

–13–

property to abut. However, public roadways can be established by prescription or implied dedication. *See Allen v. Keeling*, 613 S.W.2d 253, 254–55 (Tex. 1981); *Lindner v. Hill*, 691 S.W.2d 590, 591–92 (Tex. 1985). When a road is established by prescription, the right is not limited to the beaten path used, but includes sufficient land for drainage ditches, repairs, and the convenience of the traveling public. *See Allen*, 613 S.W.2d at 254–55. Whether a public right-of-way has been acquired by dedication or prescription is a question of fact. *See Lindner*, 691 S.W.2d at 591; *Malone v. Whitfield*, 621 S.W.2d 192, 195 (Tex. Civ. App.—Waco 1981, writ ref'd n.r.e.).

Millwee alleged that Alamo Street was a city street by prescriptive easement and was shown on the City thoroughfare plan. He presented evidence of metes and bounds descriptions of the Alamo Street right-of-way prepared by City staff and evidence that his property abuts Alamo Street as described in those descriptions. Millwee's engineer testified by affidavit that the Alamo Street right-of-way abuts the west line of Millwee's property. The City presented no evidence negating these allegations.

The issue before us is subject matter jurisdiction—not the merits of a particular claim. That a particular injunction might be erroneous does not mean the trial court lacks subject matter jurisdiction to rule on a request for the injunction. Further, there are fact issues regarding the existence and status of Alamo Street. We conclude the City did not meet its burden to negate Millwee's jurisdictional allegations regarding the injunction claim.

## NUISANCE

The City attacks Millwee's nuisance claim on the basis that his pleadings fail to state a valid claim for a regulatory taking. As discussed above, we have concluded that Millwee's regulatory taking claim remains unresolved. Thus we conclude as we did in *Millwee-Jackson* that a fact issue exists whether the alleged nuisance rose to the level of a constitutional taking.

*See Millwee-Jackson*, 350 S.W.3d at 785.

## CONCLUSION

The City sought to negate Millwee's jurisdictional allegations by presenting evidence and argument. Viewing the evidence favorable to Millwee as true, and indulging every reasonable inference and resolving any doubts in his favor, we conclude the evidence raises a fact question on jurisdiction. *See Hayes*, 327 S.W.3d at 116; *Miranda*, 133 S.W.3d at 228. Therefore, the trial court properly denied the plea to the jurisdiction. We overrule the City's issue and affirm the trial court's order denying the plea.

/Jim Moseley/
JIM MOSELEY
JUSTICE

130278F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-13-00278-CV     V.

MILLWEE-JACKSON JOINT VENTURE
AND STEPHEN M. MILLWEE, Appellees

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 04-07287-E.
Opinion delivered by Justice Moseley.
Justices Lang and Brown participating.

In accordance with this Court's opinion of this date, the trial court's February 22, 2013 order denying appellant's amended second plea to the jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellees MILLWEE-JACKSON JOINT VENTURE AND STEPHEN M. MILLWEE recover their costs of this appeal from appellant CITY OF DALLAS.

Judgment entered this 4th day of April, 2014.

/Jim Moseley/
JIM MOSELEY
JUSTICE

–16–