**Affirmed and Memorandum Opinion filed May 30, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00207-CV

---

### EMIEL W. OWENS, JR., Appellant

### V.

### JAMES E. MASON AND SHELLY GODFREY, Appellees

---

**On Appeal from the 506th District Court
Grimes County, Texas
Trial Court Cause No. 32,045**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Emiel Owens, Jr., appeals the trial court's judgment in favor of appellees, James E. Mason and Shelly Godfrey (collectively, "the Masons"), on their claims for nuisance and a permanent injunction. We affirm.

### I. FACTUAL BACKGROUND

On July 7, 2003, Anderson Hills, Ltd, the developer of the Anderson Hills

Subdivision, Grimes County, Texas, conveyed three tracts of land by deed to the Masons. The deed also conveyed the following easement:

> TOGETHER WITH non-exclusive road easement for the purpose of ingress and egress to a public road containing 1.588 acres of land, more or less, out of and a part of the A. D. KENNARD SURVEY. Abstract No. 34. Grimes County, Texas, and being described by metes and bounds on Exhibit "D" attached hereto and made part hereof for all purposes.

On October 25, 2010, Craig and Dixie Matlock conveyed two tracts of land, also in the Anderson Hills Subdivision, by deed to Owens. The Matlock deed conveyed the same easement to Owens.

The Masons' three tracts and Owens's two tracts abut the sixty-foot easement. A rock and dirt road known as Greenmeadow Drive was built in the easement. It is undisputed that Owens tore up the road on April 5, 2011, when he removed the culvert in the road.

Godfrey testified that, on April 5, 2011, when she was coming home from work and turned onto Greenmeadow Drive, she was unable to drive any farther than the point where her property line and her neighbors' property line met. Godfrey described the condition of the road:

> The road was all tore up. There were mounds of dirt and rock to where I could not access our property on the road. I could not access our property on our side of the road on the easement because [Owens] had also taken a bulldozer and pushed mounds of dirt and rock onto the right side of the easement.[1]

Godfrey explained that they were able to access their property for one day by driving on the side of road that was in the part of the easement that was located on Owens's property. The next day, however, Owens put in a berm, and the

---

[1] Godfrey mistakenly said that the dirt had been pushed onto the "right" side of the easement. She immediately corrected her mistake and said she meant the "left" side.

Masons could no longer access their property by that part of the easement located on Owens' property. With their neighbors' permission, the Masons accessed their property by driving onto their neighbors' property. Godfrey testified that "we were basically tearing up their yard with our vehicles and making tracks in their yard just so we could access our property." Godfrey testified that it was a week before they could use the road again to access their property. Several photographs taken by Godfrey showing the road in its damaged condition were admitted into evidence.

Godfrey testified that the road had not been repaired to the condition that existed before April 5, 2011. They could use the road after Mason had smoothed out the road with a tractor and a front-end loader. Godfrey described the road at the time of trial as "very bumpy and very holey"; "it is not a smooth drive like we had." Godfrey explained that "You can drive on" the road, but "[i]t is not in the condition before it was tore up." Mason described the road as "[m]aybe passable, but unacceptable." Both Mason and Godfrey testified that Greenmeadows Drive was the only road by which to access their property and Owens knew the road was the only way to access their property.

Owens testified that he removed the culvert because it drained water from the Masons' property onto his property. Owens stated that it was not his intention to destroy the road or obstruct the easement. When shown the photographs of the road taken by Godfrey, Owens denied that photographs were of the road or even the subdivision, and claimed that they were "fabricated." Owens stated that he did not do as much damage as was shown in the photographs. Brenda Jackson, Owens's wife, testified that the photographs were of Greenmeadow Drive, but she had never seen the road in that condition.

3

## II. PROCEDURAL BACKGROUND

On April 8, 2011, three days after Owens had torn up the road, the Masons filed their original petition alleging a claim for nuisance and seeking a declaratory judgment for construction and declaration of their rights in the easement. The Masons requested a temporary restraining order, a temporary injunction, and a permanent injunction to enjoin Owens from obstructing the easement and interfering with their use of, and access to, their property. The Masons also brought a claim for a violation of the Texas Water Code for obstruction of a creek that flowed from their property to Owens's property. Owens has neither an answer nor affirmative pleadings seeking relief on file.[2] On April 8, 2011, the trial court signed a temporary restraining order, and, on May 2, 2011, the parties entered into an agreed order for a temporary injunction prohibiting Owens from obstructing the easement or interfering with the Masons' use of, and access to, their property.

On September 16, 2011, the trial court held a one-day bench trial. At trial, the Masons nonsuited all of their claims pertaining to the alleged obstruction of the creek. Thus, after the trial court heard evidence, it signed findings of fact and conclusions of law in favor of the Masons regarding the easement alone. Specifically, on November 7, 2011 the trial court signed the final judgment (1) declaring the easement a "non-exclusive road easement for the purpose of ingress

---

[2] In their brief, the Masons correctly point out that the reporter's record of this cause contains no pleadings filed by Owens until after the trial of this matter. By his reply brief, Owens urges that his counsel mailed an original answer to the court and attaches a copy of a general denial as an appendix to his reply brief. Such answer does not bear a file stamp. Owens has not attempted to supplement the record. Therefore, we do not consider the pleading. *See Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 342 n.2 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[I]n our review, we cannot consider documents attached as appendices to briefs and must consider a case based upon the record filed."); *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered.").

and egress to a public road"; (2) enjoining Owens from interfering with the Masons' use of the easement; and (3) awarding the Masons $3,000 in actual damages, $9,000 in exemplary damages, and $2,040 in attorney's fees. On December 1, 2011, Owens filed a motion for new trial. On December 9, 2011, the trial court held a hearing on Owens's motion for new trial, and signed the order denying the motion on December 14, 2011. On January 13, 2012, Owens filed a motion for reconsideration. There is no written ruling on the motion for reconsideration, but a notation on the docket sheet shows that the trial court denied the motion on January 17, 2012. Owens then brought this appeal.

## III. ANALYSIS

### A. Conclusions of Law

In his first issue, Owens claims the evidence is legally insufficient to support "the conclusions of law and the judgment." At the outset we note that Owens does not challenge any of the trial court's specifically-stated conclusions of law. Therefore, he has waived any error with regard to the trial court's stated conclusions of law for insufficient briefing. *See* TEX. R. APP. P. 38.1(h).

Instead, Owens complains that the trial court did not construe the easement and the parties' rights under the easement *as it relates to drainage and the culvert*. Specifically, Owens argues that (1) the Masons have only the right to the non-exclusive easement of ingress and egress, not an easement for drainage; (2) the drainage easement violates Section 11.086 of the Texas Water Code;[3] and (3) the Masons' actions constitute a trespass onto Owens's property.

The trial court's judgment must conform to the pleadings. TEX. R. CIV. P. 301; *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The purpose of pleadings is to give reasonable notice of the

---

[3] TEX. WATER CODE ANN. § 11.086 (West 2008).

5

claims asserted. *Moneyhon*, 278 S.W.3d at 878. A party may not be granted relief in the absence of pleading to support that relief. *In re Estate of Gaines*, 262 S.W.3d 50, 60 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Unpleaded claims or defenses that are tried by implied or express consent are treated as if they had been raised by the pleadings. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991). An unpleaded issue may be deemed tried by consent if evidence on the issue was developed under circumstance indicating that the parties understood the issue was part of the case and the other party failed to properly complain. TEX. R. CIV. P. 67; *Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Owens did not plead any affirmative claims against the Masons related to the presence of the culvert, i.e., whether the Masons have the right to a "drainage easement"; whether the "drainage easement" violated the Texas Water Code; or whether the drainage of water onto Owens's property constituted a trespass. Nor was the issue of the drainage easement tried by consent. The only evidence regarding the culvert was (1) the Masons' testimony that the culvert existed when they bought their property; and (2) Owens's testimony that he removed the culvert because he did not want the water draining from the Masons' property onto his property. However, this evidence does not address whether Masons' are entitled to a "drainage easement"; whether such easement violated the Texas Water Code; or whether the Masons' actions constituted a trespass. Thus, the record shows no evidence concerning the drainage easement was developed at trial. Consequently, in the absence of pleadings or trial by consent of any claims related to the culvert and the drainage easement, the trial court did not err by not declaring the parties' rights with regard to the "drainage easement." *See In re Marriage of Little*, No. 07-10-00134-CV, 2011 WL 3207768, at *2 (Tex. App.—Amarillo July 28, 2011,

6

no pet.) (mem. op.) (holding it was not error for trial court not to enter money judgment in favor of wife in the absence of pleading or trial by consent).

We overrule Owens's first issue.

## B. Variance between the Pleadings and the Proof

In his third issue, Owens claims there is a fatal variance between the pleadings and the proof. Specifically, Owens complains that the Masons' petition requested a declaratory judgment regarding their rights in the easement, but did not address whether (1) Owens had the right to remove the culvert; or (2) the removal of the culvert resulting in a "dip" in the road constituted a material or substantial obstruction of the easement and an interference with their right to use and enjoyment of the easement.

Texas follows a "fair notice" pleading standard, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). The purpose of the fair notice requirement is to provide the opposing party with sufficient information to enable him to prepare a defense. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988). The pleadings and the evidence must coincide. *In re Canales*, 113 S.W.3d 56, 66 (Tex. Rev. Trib. 2003) (citing *Safety Cas. Co. v. Wright*, 160 S.W.2d 238, 245 (Tex. 1942)). A variance between the pleadings and proof is fatal only if the divergence is substantial, misleading, and prejudicial. *Stone v. Lawyers Title Ins. Co.*, 554 S.W.2d 183, 187 (Tex. 1977).

Here, there is no variance between the Masons' pleadings and the evidence presented at trial. The Masons' pleaded that Owens "destroyed the road providing access to [the Masons'] Property" and "thereby obstructed the Easement and

prevented [the Masons'] use of the Easement." Owens cannot ask this court to resolve issues regarding the drainage easement and the existence of the culvert, which, as we addressed above, were neither pleaded nor tried by consent. A review of the record shows that the evidence coincides with the Masons' pleadings. *See In re Canales*, 113 S.W.3d at 66.

Owens further contends that the evidence is not legally sufficient to establish a private nuisance because the Masons failed to show (1) they had a legal right to install the culvert; (2) they had legal ownership of the land where the culvert was installed; and (3) the interference was "substantial." Again, Owens is requesting that this court rule on his complaints regarding the existence of the culvert and the trial court's purported grant of a drainage easement to the Masons. Owens failed to plead any affirmative claims for relief with respect to the culvert and the drainage easement, and the parties did not try those issues by consent as no evidence was developed on them. *See In re Estate of Gaines*, 262 S.W.3d at 60; *Frazier*, 102 S.W.3d at 411. Therefore, we do not address Owens's arguments regarding the culvert or the drainage easement.

We overruled Owens's third issue.

## C. Findings of Fact

In his fourth issue, Owens claims the evidence is legally and factually insufficient to support the findings of fact.[4] Owens specifically challenges findings of fact nos. 4, 5, 7, 8, 9, 10, and 11.

---

[4] Owens states his fourth issue as "Whether the evidence is factually sufficient to support the findings of fact." However, because Owens includes the standard of review for legal sufficiency of the evidence, he appears to be challenging the legally sufficiency of the evidence supporting the findings of facts. Erring on the side of caution, we address both the legal and factual sufficiency of the evidence.

**Nuisance**

Findings of fact nos. 4, 5, 7, 9, and 10 relate to the elements of a claim for nuisance.[5] Findings of fact entered in a case tried to the court are entitled to the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable

---

[5] Findings of fact nos. 4, 5, 7, 9, and 10 are as follows:

4.     On or about April 5, 2011, Defendant damaged a road providing access to Plaintiff's Property. Such road had been constructed by Plaintiffs within the Easement which is commonly known as Greenmeadow Drive in the Anderson Hills Subdivision, Grimes County, Texas. Defendant thereby obstructed the Easement and, thus, interfered with Plaintiffs' use and enjoyment of the Easement and Plaintiffs' Property; and thereby invaded Plaintiffs' interest in such property.

5.     On or about April 7, 2011, Defendant constructed a dirt embankment in the Easement thereby further interfering with Plaintiff's use and enjoyment of the Easement and, consequently, the use and enjoyment of Plaintiffs' Property; and thereby further invading Plaintiff's interest in such property.

*          *          *

7.     Defendant's conduct was intentional and unreasonable.

*          *          *

9.     Defendant's conduct resulted in a condition that substantially interfered with Plaintiffs' use and enjoyment of the Easement and, consequently, Plaintiffs' Property.

10.     Plaintiffs were injured by (a) damage to the road which had been constructed by Plaintiffs'; (b) the loss of the use and enjoyment of the Easement and Plaintiffs' Property; and (c) emotional harm.

persons could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). When the appellant attacks the legal sufficiency of a finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the finding. *Id.* at 810. We may not sustain a legal sufficiency, or "no evidence" point unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id.*

To evaluate the factual sufficiency of the evidence to support a finding on which the appellant did not have the burden of proof, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

Unchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Warwick Towers Council of Co-Owners v. Park Warwick, L.P.*, 298 S.W.3d 436, 444 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A nuisance may arise by causing (1) physical harm to property, such as by the encroachment of a damaging substance; (2) physical harm to a person on his property from an assault on his senses or by other personal injury; or (3) emotional harm to a person from the deprivation of the enjoyment of

10

his property through fear, apprehension, or loss of peace of mind. *Kane v. Cameron Int'l Corp.*, 331 S.W.3d 145, 147–48 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Actionable nuisance may arise from an invasion of another's interests attributable to activity that is intentional, negligent, or abnormal and out place in its surroundings. *Warwick Towers Council of Co-Owners*, 298 S.W.3d at 444.

Owens initially argues that (1) the Masons do not have a valid cause of action against him because they were trespassers when they installed a culvert under the road; and (2) there is no evidence to support the trial court's granting the Masons a drainage easement. As previously addressed with regard to Owens's first and third issues, Owens did not plead any causes of action related to the culvert or the drainage easement, and the parties did not try any issues related to the culvert or drainage easement by consent. *See In re Estate of Gaines*, 262 S.W.3d at 60; *Frazier*, 102 S.W.3d at 411. Therefore, we do not address these contentions.

As to the Masons' nuisance claim, it was undisputed that Owens damaged the road, although the parties disputed how much damage he caused. Owens testified that he never intended to obstruct the easement or prevent the Masons' use of the easement. Owens claimed that he merely removed the culvert, which did not encompass the entire road, and that the only damage caused by the removal of the culvert was a "dip'" in the road. Owen argues that the testimony of both Godfrey and Mason confirmed that their right of ingress and egress was not affected, and they were able to drive on the road. Therefore, according to Owens, the damage shown in the photographs taken by Godfrey was not consistent with the removal of the culvert, but was more consistent with the reconstruction of the

11

road by the Masons two years before trial.[6] Owens claimed at trial that photographs were "fabricated."[7]

Godfrey, on the other hand, described the condition of the road as "all tore up." Initially, the Masons accessed their property for a day by driving on the part of the easement located on Owens's property. When Owens put in the berm, the Masons had to drive on their neighbors' property, "tearing up their yard with our vehicles and making tracks in their yard just so we could access our property." It was a week before the Masons could drive on the road, which was after Mason had smoothed the road with a tractor and a front-end loader. Even then, the road was "very bumpy and very holey" unlike "the smooth" road they had before. The Masons could drive on the road; however, its condition was "passable, but unacceptable." Godfrey testified that the photographs of the road were fair and accurate representations of the condition of the road after the damage had been done.

Moreover, with respect to Owens's claim that the "dip" in the road was the only damage to road, Owens takes Godfrey's testimony out of context. A review of the record shows that Godfrey was describing the damage shown in the photographs, when she pointed out in one of the photographs "the hole where the culvert once was and which is a dip now in the roadway along with the destruction." Godfrey did not testify that the "dip" in the road was the only damage done.

---

[6] Both Mason and Godfrey testified that the road was reconstructed about two or two-and-one-half years before trial.

[7] Owens states in his appellate brief that he provided, in support of his motion for reconsideration, photographs purportedly showing the true condition of the road after he had removed the culvert. We do not consider those photographs because they were not offered at trial. Moreover, as discussed below with regard to Owens's second and sixth issues, the trial court did not rule on Owens's motion for reconsideration before its plenary power expired.

The Masons presented undisputed evidence of emotional harm caused by the damaged road. Godfrey described the stress the situation caused her family: "It was a lot of stress. Had we needed EMS, fire department, there was no way. There would have been no way for them to have access to our property when this happened the first week." Godfrey also explained the stress the situation caused her children:

> My children were very stressed. My child would cry. My seven-year old would cry and worry when the Owens — she would always want to know — when I would pick her up from school, she would like, [M]om, are the neighbors there, are they there? I'd try to calm her and soothe her not to have to worry about if they were going to be there or not.

Godfrey further testified that the damaged road caused "[t]he fear of not being able to get in and out" and it caused her apprehension, worry, and to lose her peace of mind. Mason testified that damage to the road caused stress to his family, him to lose his peace of mind, his wife and children to "worr[y] everyday."

Here, it was uncontroverted that Owens caused the damage to the road. The trial court could have believed testimony by the Masons that there was sufficient damage to the road to block access to their property, and the photos taken by Godfrey accurately represented the condition of the road on April 5, 2011, and the following days. The trial court could have rejected Owens's testimony that he did not obstruct the road and that the photos were "fabricated." *See Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.) ("In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony."). The trial court also could have accepted the Masons' uncontroverted testimony that they and their children suffered emotional harm. Finally, because was it undisputed that Owens

13

knew the road was the only access to the Masons' property, the trial court could have inferred that Owens acted intentionally and unreasonably. We conclude that the evidence is legally and factually sufficient to support findings of fact nos. 4, 5, 7, 9, and 10 to establish the Masons' nuisance claim.

**Malice**

Owens also challenges the legal and factual sufficiency of the evidence to support finding of fact no. 8—that he acted with malice or the specific intent to cause substantial injury or harm to the Masons. Exemplary damages may be awarded in cases where a claimant proves by clear and convincing evidence that the harm resulted from fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (West Supp. 2012). The trial court found that Owens acted with malice. Malice is defined as a specific intent by the defendant to cause substantial injury or harm to the claimant. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(7) (West 2008). Specific intent means that the actor desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it. *Seber v. Union Pac. R.R.*, 350 S.W.3d 640, 654 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Malice may be shown by direct or circumstantial evidence. *Id.*

When the standard of proof at trial is elevated, the standard of appellate review must likewise be elevated. *Sw. Bell Tele. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004). In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must consider all the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 220 (Tex. 2005). "If, after conducting its legal sufficiency review, a court determines that no reasonable factfinder could form a

14

firm belief or conviction that the matter that must be proven is true, then the court must conclude that evidence is legally insufficient." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

When reviewing the factual sufficiency of the evidence, we determine "whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider whether the disputed evidence is such that a reasonable fact finder could not have resolved the disputed finding in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Owens contends that he had the "right to protect his property," i.e., remove the culvert because water was draining onto his property. As we observed previously, the issue of the drainage easement was not pleaded or tried by consent by the parties.

Owens further argues that the Masons did not establish a "substantial injury." The deed by which the property was conveyed to Owens showed that he obtained a "non-exclusive road easement for the purpose of ingress and egress to a public road." Owens also testified that he understood that he was purchasing the property subject to existing easements. Owens knew where the easement was located because he had the property surveyed. Owens also knew the road was the Masons' only access to their property.

The Masons presented evidence that that the entire road was blocked due to the destruction of the road by Owens and the berm Owens put in and, therefore, they had no access to their property. The Masons resorted to driving on their

15

neighbors' property and tearing up their neighbors' yard while doing so. This situation lasted for a week until Mason smoothed the road. Owens claimed that taking out the culvert did not obstruct the entire road and the photographs showing the damaged road were "fabricated." Here, the trial court could have accepted the Masons' testimony and rejected Owens's. *See Rich*, 274 S.W.3d at 884.

The trial court could have inferred that Owens had the specific intent, when he removed the culvert, to cause substantial harm or injury to the Masons by obstructing access to their property, or that he believed that would be the consequences of his actions. *Cf. Seber*, 350 S.W.3d at 654–55 (holding, as a matter of law, there was no evidence of specific intent to cause substantial injury or harm where evidence of a purposeful restriction of access to land that merely made ingress and egress less convenient did not raise a material fact issue regarding a substantial injury); *Shed, L.L.C. v. Edom Wash 'N Dry, L.L.C.*, No. 12-07-00431-CV, 2009 WL 692609, at *8–9 (Tex. App.—Tyler Mar. 18, 2009, pet. denied) (mem. op.) (holding that proof of intent to unreasonably restrict an access easement is not proof of malice: "[w]hile blocking a more direct walking path and having a small opening in the fence for vehicular traffic might demonstrate an intent to cause injury, . . . [t]he evidence remains that [the appellants] at all times provided [the appellee's ] occupants access for ingress and egress across [the appellee's] property"). We conclude that, by clear and convincing evidence, the evidence is legally and factually sufficient to support finding of fact no. 8.

**Permanent Injunction**

Owens also challenges legal and factual sufficiency of the evidence to grant a permanent injunction. Finding of fact no. 11 provides that the obstruction of the easement still exists, the Masons will suffer irreparable injury should the obstruction continue, and the benefit of issuing a permanent injunction will

16

outweigh the harm to Owens. A permanent injunction is appropriate if a party shows (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Wiese v. Healthlake Cmty. Ass'n.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We review the grant or denial of a permanent injunction for an abuse of discretion. *Id.*

Owens challenges only the element of irreparable injury. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). That is, the party must establish that there is no adequate remedy at law. *Millee-Jackson Joint Venture v. Dallas Area Rapid Transit*, 350 S.W.3d 772, 782 (Tex. App.—Dallas 2011, no pet.). An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Id.* We have already concluded that the evidence is legally and factually sufficient to support the Masons' nuisance claim. The obstruction of the road and, thereby, access to the Masons' property cannot be measured by any pecuniary standard. Therefore, the Masons have established the element of irreparable injury. Owens does not challenge any of the other elements of a permanent injunction. Therefore, we conclude that the trial court did not abuse its discretion by granting a permanent injunction.

We overrule Owens's fourth issue.

### D. Excessive Damages

In his fifth issue, Owens claims the trial court abused its discretion by awarding excessive damages. The standard of review for a complaint of excessive damages is factual sufficiency of the evidence. *Ellis*, 971 S.W.2d at 406.

17

Owens first argues that the Masons are not entitled to any damages because of the Masons' trespass and installation of the culvert creating a drainage easement. Owens contends that his abatement of the drainage easement and removal of the culvert were consistent with his rights as a property owner to protect his property from trespassers. Again, because no claim regarding Owens's complaint about the culvert or drainage easement was pleaded or tried by consent, we do not address this argument.

Owens further urges that the evidence does not support the award of actual damages. At trial, an invoice from Surface Dirt Works dated April 23, 2010, was admitted into evidence showing an estimate of $3,013.33 to repair the road to its condition before April 5, 2011. Owens asserts that the invoice did not reflect the cost to repair the damage due to the removal the culvert. Relying on the April **2010** date on the invoice and the amount of materials listed, Owens argues that the invoice, instead, referred to the reconstruction of the road six months prior to Owens's buying his property in the subdivision and was not consistent with the damage caused by merely removing the culvert.

Owens testified that he obtained an estimate to repair the road from "Mr. Paul Gonzalez in Hempstead, Texas." Gonzalez gave Owens an estimate of "$840 for material," and Owens had his own tractor with a box blade to do the work.

Mason testified that a company called Surface Dirt Works reconstructed the road two or two-and-one-half years before trial. Mason asked Billy Surface, the owner of Surface Dirt Works, to give him an estimate of the cost to put the road back to its condition prior to Owens's damaging the road. Mason identified the April 23, 2010 invoice as the estimate Billy Surface gave him to repair the road. Mason further testified that he worked for the highway department, building and repairing highways. Mason was familiar with the use of heavy equipment used for

18

road work and the cost of rocks used for roads. Based on his knowledge of road work and the estimate Billy Surface gave him, Mason stated that the cost to repair the road would be about $3,000 or $3,100.

Notwithstanding the date discrepancy, the trial court was entitled to believe Masons's testimony that the invoice was the estimate to repair the damage to the road done by Owens and that Mason was familiar with the equipment used on roads and the costs of rocks used for roads. *See Rich*, 274 S.W.3d at 884. The trial court could have believed Mason's testimony about the cost to repair the road as well. We conclude that the evidence is factually sufficient to support an award of actual damages in the amount of $3,000.

Owens also contends that the Masons are not entitled to any exemplary damages because they did not prove that he acted with malice.[8] Owens argues that he agreed to the temporary restraining order and refrained from any further conduct that would be seen as obstructing the easement demonstrated his desire to prevent any more conflict. Owens further asserts that the diversion of water onto his property interfered with the use of his property. Therefore, according to Owens, the Masons "should not be awarded exemplary damages for their own violation but should be enjoined from further action of this type."

Because Owens did not plead any claims regarding the drainage easement and the parties did not try any such issue by consent, we do not address this argument. In any event, we have previously concluded with regard to Owens's third issue that, by clear and convincing evidence, factually sufficient evidence supports the trial court's finding of malice.

---

[8] Although Owens challenges the amount of actual damages as excessive, he does not challenge the exemplary damage award as excessive. His complaint is that "[t]he evidence did not dictate an award of exemplary damages."

19

We overrule Owens's fifth issue.

### E. Newly Discovered Evidence

In his second issue, Owens claims the trial court abused its discretion by denying his motion for new trial based on newly discovered evidence. Owens argued in his motion that the installation of the culvert violated the Grimes County standards; the removal of the culvert did not result in the destruction of the entire road, which could be and was still used; and new evidence in the form of testimony by Billy Surface would show that no culvert was part of the road when he installed the new culvert a couple of years prior to trial.

A party seeking a new trial on grounds of newly discovered evidence must demonstrate to the trial court that (1) the evidence has come to his knowledge since the trial; (2) his failure to discover the evidence sooner was not due to lack of diligence; (3) the evidence is not cumulative; and (4) the evidence is so material it would probably produce a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). We review the denial of a motion for new for abuse of discretion. *Id.*

"When a party seeks a new trial based on newly discovered evidence, the motion for new trial must verify that the evidence is true and correct." *Raymond v. Raymond*, 190 S.W.3d 77, 82 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A trial court does not abuse its discretion by denying a motion for new trial when the motion is not verified. *See Xenos Yuen v. Fisher*, 227 S.W.3d 193, 205 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Brown v. Brown*, No. 09-06-473-CV, 2007 WL 2324303, at *5 (Tex. App.—Beaumont Aug. 16, 2007, no pet.) (mem. op.); *In re A.A.E.*, No. 13-03-528-CV, 2005 WL 1364084, at *6 (Tex. App.—Corpus Christi June 9, 2005, no pet.) (mem. op.). Owens's motion for new trial was not verified.

20

Moreover, a movant's mere allegations will not suffice to obtain a new trial on the basis of newly discovered evidence; rather, the movant must introduce admissible evidence at a hearing on the motion for new trial establishing such essential facts as no prior knowledge on the part of the movant, the prior diligence exercised by the movant, and the nature of the newly discovered evidence. *Strong v. Strong*, 350 S.W.3d 759, 772 (Tex. App.—Dallas 2012, pet. denied); *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757 (Tex. App.—Amarillo 1995, writ denied). Here, Owens's motion for new trial did not mention the required elements for granting a new trial and, therefore, did not include even "mere allegations" of those required elements. At the hearing on Owens's motion for new trial, Owens's attorney told the trial court that she would not be presenting any witnesses but "[s]trictly argument and law."

Because Owens's motion was not verified and Owens did not present any evidence at the hearing on any of the elements necessary to establish that a new trial was warranted, we conclude that the trial court did not abuse it discretion by denying the motion for new trial.

In his brief, Owens states that he wanted a new trial so that expert testimony would "clarify and affirm the Easement rights of the parties." Owens states that Adolph G. Assenheimer, the developer of Anderson Hills Subdivision, would provide new evidence that the easement was solely for ingress and egress, not drainage, and the deed restrictions require homeowners to follow the Grimes County standards for installing a culvert. Owens further states that Bob Cochrane, engineer for the Grimes County Road and Bridge Department, would provide expert testimony on specific requirements and specifications governing the installation of culverts in accordance with the Grimes County Standards.

Owens, however, did not mention either Assenheimer or Cochrane or the

21

evidence they would purportedly provide at a new trial in his motion for new trial. Owens filed a motion for reconsideration after the trial court denied his motion for new trial. In his motion for reconsideration, Owens asserted for the first time that "the Developer of the Anderson Hills Subdivision" would testify about the purpose of the easement, and Cochrane would testify about requirements and specifications governing the installation of culverts in accordance with the Grimes County standards.

A trial court has plenary power to grant a new trial within thirty days after the judgment is signed. TEX. R. CIV. P. 329b(d); *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000). The filing of a motion for new trial within the thirty-day period extends the trial court's plenary power over the judgment for seventy-five days, depending on when or whether the court acts on the motion. TEX. R. CIV. P. 329b(e); *Lane Bank Equip. Co.*, 10 S.W.3d at 310. If the motion is denied, the trial court's plenary power is extended for thirty days after the motion is denied. TEX. R. CIV. P. 329b(e).

The First Court of Appeals has considered very similar facts. *See In re Valdes*, No. 01-08-00165-CV, 2008 WL 1829790 (Tex. App.—Houston [1st Dist.] Apr. 24, 2008, orig. proceeding) (mem. op.). In *Valdes*, the real party in interest filed a motion to reconsider twenty-eight days after the trial court had denied the motion for new trial, which was two days before the trial court's plenary power expired. *Id.* at *1. The trial court granted the motion to reconsider more than a month later. *Id.* The court of appeals held that the trial court abused its discretion by granting the motion to reconsider because that motion was essentially an amended motion for new trial that did not extend the trial court's plenary power and, therefore, the order was void. *Id.* at *1–2.

Here, the trial court denied Owens's motion for new trial by written order on

22

December 14, 2011. The trial court's plenary power was then extended until January 13, 2012, which was the thirtieth day after the trial court had denied the motion for new trial. *See* TEX. R. CIV. P. 329b(e). Owens filed his motion for reconsideration on January 13, 2012; the motion for reconsideration did not extend that trial court's plenary power. *See In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding) (per curiam) (holding that the filing of an amended motion for new trial does not extend the trial court's plenary power). Therefore, the trial court's plenary power expired without the court's having ruled on the motion for reconsideration, and granting the motion for reconsideration would have been an abuse of discretion.

We overrule Owens's second issue.

### F. Bias and Prejudice

In his sixth issue, Owens claims the trial court's denials of his motion for new trial and motion for reconsideration were the result of bias and prejudice.

Owens complains that the trial court denied his motion for new trial without a full hearing on and consideration of the evidence and, thereby, showing that the court was predisposed to make a "hostile and quick decision." During trial, when Owens was shown photographs taken by Godfrey of the road, Owens stated that the pictures were "fabricated." The trial court then stated:

> Well, I'll tell you what, you just called Jon Fultz [the Masons' attorney] a liar. I have known Jon Fultz four years plus. I have never known the man to fabricate evidence. Do you want to reconsider your testimony?

At the hearing on Owens's motion for new trial, when Owens's attorney stated that she was not going to present any evidence, the Masons' attorney argued that Owens's motion should be denied because the motion did not address the elements necessary to grant a new trial on newly discovered evidence, it was not

verified, and Owens was not presenting any evidence in support of the motion. The trial court denied Owens's motion stating:

> Well, Ms. Wallace [Owens's attorney], you know, I recall this trial and I recall the pictures. I recall the testimony. I recall the deeds that were admitted and the restrictions that are included in the deeds and the references thereto; and I find your Motion for New Trial to be insufficient on its face because of lack of the evidentiary averments that are necessary, as well as the fact that it is contrary to the testimony and evidence that was actually presented at trial.

The record shows that the trial court denied Owens's motion for new trial because it was deficient. As we concluded in Owens's second issue, the trial court did not abuse its discretion by denying Owens's motion for new trial because the motion was not verified and Owens's did not present any evidence at the hearing on his motion for new trial. Again, because of the deficiencies in Owens's motion and his failure to put on any evidence at the hearing, we cannot say that the trial court's denial of his motion for new trial without holding a "full hearing" was the result of bias or prejudice. *See Strong*, 350 S.W.3d at 772 (holding that the appellant did not show the trial court abused its discretion by not granting the motion for new trial where he did not present any evidence at the hearing that the failure to discover the evidence until after trial was not due to lack of diligence); *Xenos Yuen*, 227 S.W.3d at 205 (holding that the trial court did not abuse its discretion in denying motion for new trial because it was not verified).

Owens further complains that the trial court denied him the right to have a hearing on his motion for reconsideration when he had obtained a hearing date and expended funds to subpoena the developer and the Grimes County Engineer to provide expert testimony concerning the deed restrictions and the county standards. As explained in our analysis of Owens's second issue, it would have been an abuse of discretion for the trial court to have granted the motion because the trial court's

24

plenary power had expired.  *See In re Valdes*, 2008 WL 1829790, at *1–2.

We overrule Owens's sixth issue.

## IV.  CONCLUSION

Having overruled all of Owens's issues, we affirm the trial court's judgment.


/s/      Sharon McCally
        Justice


Panel consists of Justices Christopher, Jamison, and McCally.