**Opinion filed September 11, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00309-CV

_____

## MARCO DAVIS, INDIVIDUALLY AND ON BEHALF OF MOTLEY CAPITAL, LLC, AND MOTLEY CAPITAL, LLC, Appellants

## V.

## GULF COAST AUTHORITY, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-19-04-0385-CV**

## M E M O R A N D U M   O P I N I O N

The City of Odessa holds an easement through property owned or operated by Appellants, Marco Davis, individually and on behalf of Motley Capital, LLC, and Motley Capital, LLC. A wastewater pipeline is located on the easement. The City granted a license to Appellee, the Gulf Coast Authority (the GCA), to operate, maintain, and repair the pipeline. In April 2018, the pipeline was shut down

for twenty days due to damage to the section of the pipeline that was on Appellants' property. The GCA alleges that it suffered lost income while the pipeline was shut down and that it incurred costs to repair the damage to the pipeline.

The GCA sued Appellants for negligence and for violation of the Texas Water Code and sued Davis, individually and on behalf of Motley Capital, for tortious interference with the license. The GCA also sought a declaration that it had the right to install steel bollards around the manholes on the easement. Appellants filed a motion to dismiss the GCA's claims pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015) (the TCPA).[1] The trial court denied the motion.

Appellants initially argue for the first time on appeal that the trial court did not have jurisdiction over the motion to dismiss because the GCA does not have standing to assert its claims. In three additional issues, Appellants contend that the trial court erred when it denied the motion to dismiss because (1) the TCPA applies to the GCA's claims, (2) the GCA did not establish by clear and specific evidence a prima facie case for each essential element of its claims, and (3) Appellants proved each essential element of any valid defenses by a preponderance of the evidence.

We hold that the GCA has standing to assert the claims in this case and, therefore, the trial court had jurisdiction to rule on the motion to dismiss. We affirm the trial court's order in which it denied Appellants' motion to dismiss because (1) the TCPA does not apply to the GCA's claims for negligence and for violation of the Texas Water Code; (2) even if the TCPA applies to the GCA's claim for

---

[1]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12 (H.B. 2730) (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 7.001, .003, .005–.007, .0075, .009–.010). Because the underlying lawsuit was filed prior to September 1, 2019, the law in effect before September 1 applies. *See id.* §§ 11–12. For convenience, all citations to the TCPA in this opinion are to the version of the statute prior to September 1, 2019. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

tortious interference and to its request for declaratory relief, the GCA established by clear and specific evidence a prima facie case for each essential element of those claims; and (3) Appellants' claimed defenses, even if preserved, either relate to the claims to which the TCPA does not apply, were not established by a preponderance of the evidence, or require a merits determination more appropriately made after a trial or in a summary judgment procedure.

*Background*

In 1961, Bessye C. Ward and Walter Fay C. Averitt owned property at what is now known as 2150 South Dixie Boulevard in Odessa. Ward and Averitt conveyed a 100-foot right-of-way and easement on the property to the City for "sewage disposal water pipeline purposes." The easement reserved the use of the surface estate to Ward and Averitt "so long as such use does not interfere with or is not inconsistent with the use" of the easement by the City. Over thirty years ago, a 36-inch clay wastewater pipe was placed approximately ten feet below the surface of the easement. The pipeline "was not bedded to withstand heavy traffic."

In 1996, the City entered into a license agreement with the GCA for all easements held by the City, including the easement through Appellants' property, in which there were pipelines acquired by the GCA for the purpose of the transportation of wastewater to the South Dixie Wastewater Treatment Plant (the SDWTP). The City granted to the GCA (1) the nonexclusive right, at the GCA's risk and expense, to "lay, construct, maintain, repair, operate, replace, change and remove pipelines incident to and for the purpose of transporting wastewater" to the SDWTP and (2) the right of ingress and egress over and across the easement from a public roadway or from lands owned or rightfully occupied by the GCA to and from the pipeline for all purposes reasonably necessary and incident to the GCA's rights under the license. The GCA was required to exercise the right of ingress and egress in a prudent fashion and to not interfere with other uses of the easement. Further, if

3

the GCA performed any "construction or other work" on the easement, it was required to "fill all excavations" and "level the land" so that it would be "as nearly as practicable, in the same condition as existed immediately prior" to the construction or other work.

In 2018, Motley Capital owned, or was in possession and control of, the property. Davis is the director of Motley Capital. In March 2018, the GCA expressed concern to Davis that any construction on the surface of the easement could damage the pipeline and that the GCA's future maintenance of the pipeline could impact any surface improvements placed on the easement. Davis responded that the construction team would "only run the smaller [e]quipment" over the easement and that the team was doing everything in its power "to prevent the line from breaking." Davis requested that the GCA's "engineer team," Landgraf Crutcher & Associates, Inc., flag the easement and provide recommendations to the construction team. Landgraf "staked" the location of the pipeline and provided engineering recommendations to Davis.

On April 18, 2018, the SDWTP was shut down because it was not receiving wastewater from the pipeline. It was subsequently determined that there was a blockage in the line in the construction area on Appellants' property. The GCA alleges that a manhole and the pipeline were damaged when heavy equipment was driven over the easement. According to the GCA, one of the manholes on the easement was "severely crushed" and the pipeline was "crushed" and "catastrophically damaged." It took twenty days to repair the damaged pipeline. The GCA alleges that it incurred costs of $263,093.27 to repair the pipeline and manhole and to clean up discharged wastewater and that it suffered lost income of $210,400.

The GCA requested that Landgraf recommend measures to protect the pipeline. Landgraf's recommendations included the installation of steel bollards around each manhole on the easement. On May 25, 2018, the GCA's technical director, Leonard Levine, provided the engineering recommendations to Davis.

On June 6, 2018, Charles Harris, the GCA's facility superintendent, and Levine went to the property to verify that there was access to a manhole that would be used in a pipeline survey. Davis told Levine and Harris that he had installed 24-hour security and that the GCA was not to visit the property without his permission. Davis also told Levine and Harris that, if they visited the property without permission, they would be asked to leave or charged with trespass.

In August 2018, Harris told Davis that State law required that steel bollards be installed around the manholes on the property. Davis asked for "documentation" of the law, but Harris did not respond to the request. The GCA installed steel bollards around one manhole on the property.

Harris contacted Davis in February 2019 and requested access to the property to install bollards around additional manholes. Davis told Harris that the GCA could not install anything on the surface of the property that was not required by law. Davis allowed the GCA access to the property to inspect and service the pipeline. However, Davis did not allow the GCA to install additional steel bollards on the easement.

According to Harris, although the GCA believes that a second manhole on the easement may be damaged, it is unable to fully protect that manhole or the connected pipeline. If the second manhole has been damaged and is not repaired, the pipeline could experience another catastrophic failure. If the pipeline fails, the SDWTP could be shut down, wastewater could be discharged into the environment, and Ector County could lose sewage operations.

5

The GCA sued Appellants on March 29, 2019. The GCA asserted causes of action for tortious interference with the license against Davis, individually and on behalf of Motley Capital, and for negligence and violation of Section 49.217(b) of the Texas Water Code against Appellants. The GCA requested damages on its negligence claim and injunctive relief on all of its claims. The GCA specifically requested injunctive relief to prevent Appellants (1) from denying the GCA the right to maintain, inspect, repair, operate, change, and remove the pipeline, including denying the GCA the right to construct steel bollards around each manhole on the easement; (2) from denying the GCA its right to ingress and egress of the easement and pipeline; and (3) from operating motor vehicles over the easement and the pipeline. The GCA also sought a declaratory judgment that, as part of the maintenance and operation of the pipeline, it had a right under the license to construct the bollards.

Appellants filed a TCPA motion to dismiss and asserted that the GCA's claims were based on, related to, or in response to Appellants' exercise of the right to petition or of the right of free speech. In their reply to the GCA's response to the motion to dismiss, Appellants also argued that the GCA had failed to establish a prima facie case for each essential element of its claims and that Appellants had established a valid defense to each claim.

The trial court denied the motion to dismiss and found that the TCPA did not apply to the GCA's claims. Alternatively, the trial court found that the GCA had produced clear and specific evidence to establish a prima face case for each element of its claims. The trial court made no findings as to Appellants' asserted defenses.

*Standing*

In their first issue, Appellants raise the new argument that the trial court did not have subject-matter jurisdiction over the motion to dismiss because the GCA did not have standing to bring the asserted claims.

6

"Standing is a 'prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case.'" *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)). Standing cannot be waived and can be raised at any time. *Id.* (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993)). "We review questions of standing de novo." *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

"In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012). The "plaintiff must allege a threatened or actual injury—it may not be hypothetical." *Beasley*, 598 S.W.3d at 241; *see also Teal Trading*, 593 S.W.3d at 331 ("A plaintiff has standing to sue when the pleaded facts state a 'concrete and particularized, actual or imminent, not hypothetical' injury." (quoting *Heckman*, 369 S.W.3d at 155)). Further, the plaintiff must plead facts that demonstrate that it, rather than a third party or the public at large, suffered the injury and that the injury is fairly traceable to the defendant's conduct. *Heckman*, 369 S.W.3d at 155. Finally, the plaintiff must demonstrate a substantial likelihood that the requested relief will remedy the alleged injury. *Id.*; *see also Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018).

Standing is determined on a claim-by-claim basis. *Heckman*, 369 S.W.3d at 152–53. In our review, we construe the pleadings in the plaintiff's favor but also consider relevant evidence offered by the parties. *Beasley*, 598 S.W.3d at 240. However, we do not weigh the merits of the claim. *Id.* at 241 (citing *Blue*, 34 S.W.3d at 554). "[T]he mere fact that a plaintiff may ultimately not prevail on the merits of the lawsuit does not deprive the plaintiff of standing." *Id.*

7

## A. Violation of the Texas Water Code[2]

With certain exceptions that are not relevant in this case, Section 49.217(b) of the Texas Water Code prohibits a person from operating a "motor vehicle on a levee, in a drainage ditch, or on land adjacent to a levee, canal, ditch, exposed conduit, pipeline, pumping plant, storm water facility, or other facility for the transmission, storage, treatment, or distribution of water, sewage, or storm water owned or controlled by a district."[3] TEX. WATER CODE ANN. § 49.217(b) (West 2018). A person who drives a motor vehicle in violation of Section 49.217(b) commits a Class C misdemeanor. *Id.* § 49.217(e).[4]

Penal statutes generally do not create private rights of action. *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also Tex. Health Res. v. Pham*, No. 05-15-01283-CV, 2016 WL 4205732, at *8 (Tex. App.—Dallas Aug. 3, 2016, no pet.) (mem. op.). However, a private individual may maintain a suit to enjoin the alleged violation of a penal ordinance if "the activity complained of results in damages to such a person, peculiar to him, and not common to the public in general." *Bolton v. Sparks*, 362 S.W.2d 946, 951 (Tex. 1962); *see also Hensley v. Vill. of Tiki Island*, No. 14-03-00423-CV,

---

[2]After Appellants filed the motion to dismiss, the GCA nonsuited its claim that Appellants violated Section 49.217(b) of the Water Code. However, a party may not dismiss a claim in order to avoid a TCPA motion to dismiss. *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 468 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) (en banc) (holding that a TCPA motion to dismiss survives the nonsuit of a claim because the motion might allow the movant to obtain a dismissal with prejudice, attorney's fees, and sanctions); *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 293 (Tex. App.—Austin 2018, pet. denied) (recognizing that a TCPA motion to dismiss survives the nonsuit of a claim).

[3]A "district" is "any district or authority created by authority of either Sections 52(b)(1) and (2), Article III, or Section 59, Article XVI, Texas Constitution, regardless of how created." WATER § 49.001(a)(1). The GCA was "created as a conservation and reclamation district" pursuant to Section 59, Article XVI of the Texas Constitution.

[4]If a person has been convicted of an offense under Section 49.217(b), any subsequent offense is a Class B misdemeanor. WATER § 49.217(e).

2004 WL 2162637, at *6 (Tex. App.—Houston [14th Dist.] Sept. 28, 2004, pet. denied) (mem. op).

The GCA alleged that Appellants violated Section 49.217(b) of the Water Code and, "therefore, [are] culpable of a Class C misdemeanor" and requested an injunction that prevented Appellants from "operating motor vehicles over the Easement and Pipeline." The GCA specifically alleged that heavy equipment used on the easement caused the damage to the pipeline; that the GCA was not able to resume normal operations for twenty days; and that, without injunctive relief, Appellants could continue to operate heavy equipment in violation of Section 49.217(b) and could cause similar damage. The GCA produced evidence that it incurred costs of $263,093.27 to repair the pipeline and manhole and to clean up discharged wastewater and that it suffered lost income of $210,400.

The GCA's allegations are sufficient to support a claim that Appellants' alleged violation of Section 49.217(b) of the Water Code caused damages peculiar to the GCA. Therefore, the GCA has standing to seek injunctive relief to prevent any future violation of Section 49.217(b). *See Bolton*, 362 S.W.2d at 951; *Lozano v. Patrician Movement*, 483 S.W.2d 369, 371–72 (Tex. App.—San Antonio 1972, writ ref'd n.r.e.) (An individual "can maintain such a suit where he complains of damages peculiar to him which are not common to the public in general.").

*B. Negligence*

The GCA alleged that Appellants' negligent acts damaged the pipeline and caused injury to the GCA, specifically loss of income and costs of repair. Appellants argue that the GCA does not have standing to assert this negligence claim because it has not pleaded facts to establish that it has an ownership interest in the pipeline. However, a plaintiff demonstrates standing if (1) it has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which it complains; (2) it has a direct relationship between the alleged injury and claim

9

sought to be adjudicated; (3) it has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) it is an appropriate party to assert the public's interest in the matter as well as his own. *See Hall v. Douglas*, 380 S.W.3d 860, 872–73 (Tex. App.—Dallas 2012, no pet.).

The easement allowed Appellants to use the surface if the use was not inconsistent with and did not interfere with the City's use of the easement. Pursuant to its license with the City, the GCA had the right, at its own risk and expense, to lay, construct, maintain, repair, operate, replace, change, and remove the pipeline that was located on the easement. The GCA alleged that the pipeline was damaged by Appellants' negligent actions on the surface of the easement and that Appellants' negligence proximately caused the GCA to suffer loss of income and costs of repair.

At the very least, the GCA has alleged that it has sustained a direct injury as a result of the wrongful act of which it complains or that Appellants' actions have caused the GCA an injury in fact. *See id.* The GCA, therefore, has standing to assert its claim that Appellants' negligent conduct proximately caused damage to the GCA. *Meredith v. Rose*, No. 05-15-00054-CV, 2016 WL 4205686, at *7–8 (Tex. App.—Dallas Aug. 9, 2016, no pet.) (mem. op.) (concluding that, even though it did not own any property in the subdivision, a homeowners' association had standing to bring negligence claims because it had a duty under the declarations and covenants governing the subdivision to maintain and repair the retaining walls and foundations and it had alleged that the retaining walls and foundations were damaged by defendants' negligence); *see Hall*, 380 S.W.3d at 872–73; *see also Murphy v. Campbell*, 964 S.W.2d 265, 268 (Tex. 1997) (concluding that the plaintiffs had standing to bring negligence action where the defendant undertook to advise the plaintiffs and the plaintiffs suffered a direct loss as a result of that advice).

*C. Tortious Interference with Contract*

The elements of a claim for tortious interference with contract are (1) an existing contract subject to interference, (2) a willful intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damage or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). The GCA pleaded that it had a valid contract, the license, with the City; that Davis, either individually or on behalf of Motley Capital, knew or had reason to know of the license and of the GCA's interest in the license; and that Davis, either individually or on behalf of Motley Capital, tortiously interfered with the license when he restricted the GCA's access to the easement and the pipeline and refused to allow the GCA to install steel bollards around the manholes on the easement. The GCA alleged that it had been injured by Davis's conduct because it had not been able to "fully enjoy the rights granted under" the license, "specifically the right to maintain, repair, operate, change and remove pipelines, and ingress and egress incident to such rights." The GCA sought injunctive relief that would prevent Davis from denying the GCA "its right to maintain, inspect, repair, operate, change and remove pipelines," including the right to construct steel bollards around each manhole on the easement, and from denying the GCA its right to ingress and egress.

The GCA essentially pleaded that Davis interfered with the GCA's ability to perform its duties under the license. The GCA has standing to bring this claim. *See Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995) ("[A] party to a contract

11

has a cause of action for tortious interference against any third person . . . who wrongly induces another contracting party to breach the contract.").[5]

### D. Request for Declaratory Relief

In its request for declaratory relief, the GCA alleged that it was granted a license by the City that allowed it to "lay, construct, maintain, repair, operate, replace, change and remove pipelines" in the easement and that Appellants had denied the GCA the right to maintain and operate the pipeline when Appellants refused to allow the GCA to construct steel bollards to protect the pipeline from damage. The GCA requested a declaration that its maintenance and operation of the pipeline included the right to construct the bollards. Appellants contend that they are not parties to the license and that the City must be a party to the suit before the trial court has jurisdiction to declare the GCA's rights under the license.

"When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." CIV. PRAC. & REM. § 37.006(a) (West 2020). However, rarely is a failure to comply with Section 37.006(a) a jurisdictional bar. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex. 2004); *Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.2d 200, 204 (Tex. 1974) ("[I]t would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives a court of jurisdiction."). Rather,

---

[5]Appellants also argue that the GCA seeks to modify and expand the City's property rights and that only the City has standing to bring this claim. Appellants specifically assert: "In order to decide whether Appellants have engaged in 'wrongful interference,' the trial court would first need to decide what [the City's] rights were under the Easement and specifically whether the term 'maintain' included the ability to construct bollards." We agree that the trial court will be required to determine whether the terms "maintain," "operate," and "repair" in the license encompass the right to erect steel bollards on the easement. However, when we conduct the standing analysis, we do not consider whether the GCA will ultimately prevail on the merits of its claims. *See Beasley*, 598 S.W.3d at 241; *Blue*, 34 S.W.3d at 554.

Appellants also assert that the GCA's claim that it cannot fully enjoy its rights under the license is against the City, not Appellants. But if the GCA's rights under the license are being impeded, it is because of Appellants' actions, not the City's.

a trial court has subject-matter jurisdiction over a request for declaratory relief when a justiciable controversy exists as to the rights and status of the parties before the court and the requested declaration will actually resolve the controversy. *Brooks*, 141 S.W.3d at 163–64.

A person interested under a written contract may have determined any question or validity arising under the contract and may "obtain a declaration of rights, status, or other legal relations thereunder." CIV. PRAC. & REM. § 37.004(a). In this case, the GCA is a party to the license and is entitled to seek a declaration of its rights under the license. The GCA's rights under the license are related to a pipeline located on the easement on Appellants' property. The GCA contends that it has a right under the license to construct steel bollards on the surface of the easement. Appellants dispute that the GCA has this right. Therefore, there is justiciable controversy between the GCA and Appellants that will be resolved by a declaration of whether the GCA has the right pursuant to the license to install steel bollards around the manholes on the easement.

The trial court has jurisdiction to consider the GCA's request for a declaration that, pursuant to the license, it has the right to construct steel bollards on the easement. Whether the City should be a party to the litigation is a prudential question, rather than a question of jurisdiction. *See Brooks*, 141 S.W.3d at 162; *Amboree v. Bonton*, 575 S.W.3d 38, 45 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("[A] failure to comply with Section 37.006(a) usually triggers an analysis of 'whether the trial court should have refused to enter a judgment' until the necessary parties are joined." (quoting *Brooks*, 141 S.W.3d at 162)).

E. Conclusion

We hold that the GCA has standing to assert the claims raised in this litigation. Therefore, we overrule Appellants' first issue.

13

*The TCPA*

The TCPA protects citizens from retaliatory lawsuits meant to intimidate or silence them on matters of public concern. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). "The Legislature enacted the TCPA 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.'" *In re Panchakarla*, 602 S.W.3d 536, 538 (Tex. 2020) (orig. proceeding) (per curiam) (quoting CIV. PRAC. & REM. § 27.002)).

The TCPA provides for an expedited dismissal procedure when a legal action is based on, related to, or in response to a party's exercise of the right of free speech, right to petition, or right of association. CIV. PRAC. & REM. § 27.003(a); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant has the initial burden to demonstrate by a preponderance of the evidence that the legal action is based on, related to, or in response to one of the rights protected by the statute. CIV. PRAC. & REM. § 27.005(b); *Youngkin*, 546 S.W.3d at 679. If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. § 27.005(c); *Youngkin*, 546 S.W.3d at 679. Even when the nonmovant satisfies that burden, the trial court must dismiss the legal action if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." CIV. PRAC. & REM. § 27.005(d); *see Youngkin*, 546 S.W.3d at 679–80. We review de novo the question of whether the parties satisfied their respective burdens. *Hall*, 579 S.W.3d at 377.

In their second issue, Appellants contend that the trial court erred when it denied the motion to dismiss because all of the GCA's claims were brought in

retaliation for Davis's communications that the GCA could not access the easement without Davis's permission and that the GCA could not install steel bollards on the easement. Appellants specifically argue that they established by a preponderance of the evidence that the GCA's claims are based on, related to, or in response to Appellants' exercise of the right to petition or the exercise of the right of free speech. In their third issue, Appellants complain that the trial court erred when it determined that the GCA had established by clear and specific evidence a prima facie case of each essential element of its claims.

## A. Negligence and Violation of the Water Code

As defined by the TCPA, both the exercise of the right to petition and the exercise of the right of free speech require a "communication." CIV. PRAC. & REM. § 27.001(3), (4). The TCPA movant is required to establish a nexus between the rights protected by the statute and the nonmovant's claims. *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied); *see also Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 428–29 (Tex. App.—Dallas 2019, pet. denied). The claim must be "factually predicated on the alleged conduct that falls within the scope of [the] TCPA's definition of 'exercise of the right of free speech,' petition or association." *Grant*, 556 S.W.3d at 879; *see also Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd) (concluding that any activities by the movant "that are not a factual predicate for [the nonmovant's] claims are simply not pertinent to the inquiry" of whether the TCPA applies to the claims). "[W]hen a claim does not allege a communication, and is instead based on a defendant's conduct, the TCPA is not implicated." *Pacheco v. Rodriguez*, 600 S.W.3d 401, 410 (Tex. App.—El Paso 2020, no pet.); *see also Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 798–99 (Tex. App.—Fort Worth 2018, pet. denied) (holding that plaintiff's claims were based solely on conduct and

did not allege a communication as defined by the TCPA and, therefore, were not subject to dismissal under the statute).

To determine if a legal action falls within the scope of the statute, we consider the pleadings and affidavits that state the facts on which liability is based. CIV. PRAC. & REM. § 27.006(a); *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). As pleaded, the GCA's claims for negligence and for violation of the Water Code are based on damage to the pipeline that allegedly occurred when Appellants drove heavy equipment on top of the easement. All of Davis's communications occurred after the pipeline had been damaged. The GCA's claims for negligence and for a violation of the Water Code are factually predicated on Appellants' conduct prior to Davis's communications and not on the communications that Appellants contend are protected by the TCPA. Therefore, those claims do not fall within the protection of the statute. *See Beving v. Beadles*, 563 S.W.3d 399, 408 (Tex. App.—Fort Worth 2018, pet. denied) (holding that claims that were based on tortious conduct prior to alleged communications did not fall within the purview of the TCPA); *Grant*, 556 S.W.3d at 879.

We overrule Appellants' second issue to the extent that Appellants challenge the trial court's determination that the TCPA does not apply to the GCA's claims for negligence and for violation of the Water Code. Therefore, we need not address Appellants' third issue as to those claims. *See* TEX. R. APP. P. 47.1; *Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193, at *8 (Tex. App.—Eastland Apr. 9, 2020, no pet.) (mem. op.).

### B. Tortious Interference and Request for Declaratory Relief

We next turn to the GCA's claim for tortious interference and request for declaratory relief. Because we agree with the GCA that it established a prima facie case for each essential element of those claims, we will assume without deciding that the TCPA applies to the GCA's claim for tortious interference and request for

declaratory relief.[6] *See Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 214 (Tex. App.—Eastland 2019, pet. denied) (assuming that the TCPA applied in the determination of whether the trial court erred when it denied a motion to dismiss).

A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590. It is "the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Hall*, 579 S.W.3d at 376–77 (quoting *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016)).

"The term 'clear and specific' refers to the 'quality of evidence required to establish a prima facie case.'" *Stallion Oilfield*, 592 S.W.3d at 214 (quoting *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.)). The TCPA's requirement of "clear and specific evidence" means that the nonmovant "'must provide enough detail to show the factual basis for its claim' and must provide enough evidence 'to support a rational inference that the allegation of fact is true.'" *Hall*, 579 S.W.3d at 377 (quoting *Lipsky*, 460 S.W.3d at 590–91); *see also* CIV. PRAC. & REM. § 27.005(c). The nonmovant may rely on circumstantial evidence, which is simply indirect evidence that creates an inference to establish a central fact, unless "the connection between the fact and the inference is too weak to be of help in deciding the case." *Lipsky*, 460 S.W.3d at 588–89; *see also Hall*, 579 S.W.3d at 377.

The elements of a claim for tortious interference with a contract are (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause

---

[6]Therefore, as to the GCA's claim for tortious interference and request for declaratory relief, we need not address Appellants' complaint in their second issue that the trial court erred when it determined that the TCPA did not apply to those claims. *See* TEX. R. APP. P. 47.1; *Stallion Oilfield*, 592 S.W.3d at 221.

of the plaintiff's damage, and (4) that actual damage or loss occurred. *Prudential Ins.*, 29 S.W.3d at 77; *Stallion Oilfield*, 592 S.W.3d at 215. Pursuant to the easement, Appellants had the right to use the surface of the easement, so long as the use did not interfere with and was not inconsistent with the City's rights under the easement. The City granted the GCA a license to engage in certain activities on the easement, including the right to maintain, operate, and repair the pipeline. Appellants, who owned or controlled the surface estate, had a duty not to interfere with the City's use of the easement and, by extension, not to interfere with the GCA's activities on the easement pursuant to the license. *See Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012) ("Because the easement holder is the dominant estate owner and the land burdened by the easement is the servient estate, the property owner may not interfere with the easement holder's right to use the servient estate for the purposes of the easement."); *Greenwood v. Lee*, 420 S.W.3d 106, 111 (Tex. App—Amarillo 2012, pet. denied). Therefore, the GCA established a prima facie case of the existence of a contract subject to interference.

Actionable interference with a contract "includes any act which retards, makes more difficult, or prevents performance." *Moore v. Bushman*, 559 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The GCA alleged that Davis restricted the GCA's access to the pipeline and refused to allow the GCA to maintain or operate the pipeline through the installation of steel bollards. The GCA pleaded and produced evidence (1) that the GCA had the right under the license to maintain and operate the pipeline, (2) that Davis had restricted the GCA's right to access the easement and the pipeline, (3) that Landgraf had recommended that installation of steel bollards was necessary in order to "protect" the pipeline and the manholes, and (4) that Davis had refused to allow the GCA to install the bollards. The GCA therefore produced sufficient evidence to establish a prima facie case that Davis

willfully and intentionally interfered with the GCA's performance of its duties under the license.

Appellants assert that the GCA's evidence is insufficient to establish a prima facie case of willful and intentional interference because the license does not authorize the permanent surface-level construction of bollards on the easement and, even if it does, any surface-level construction must be limited to that which is reasonably necessary and minimally burdensome on Appellants. Appellants' arguments require a construction of the easement and of the license and, based on the language of those documents, a final determination of the GCA's rights. However, "a TCPA motion to dismiss is not a trial on the merits and is not intended to replace either a trial or the summary judgment proceeding established by the Texas Rules of Civil Procedure." *Stallion Oilfield*, 592 S.W.3d at 215. Rather, we consider only whether the GCA met its burden to establish a prima facie case for each essential element of its claims by clear and specific evidence. *See West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019); *Stallion Oilfield*, 592 S.W.3d at 215.

As to the final two elements of its tortious interference claim, the GCA did not allege that it suffered any actual damages due to the willful or intentional interference and did not produce any evidence of such damages. Rather, the GCA sought injunctive relief to prevent Appellants from interfering with the GCA's duties under the license. The GCA specifically alleged that, without injunctive relief, it was unable to construct the bollards necessary to protect the easement and the pipeline from "damage akin to that made the basis of this suit."

Injunctive relief is an appropriate remedy for a tortious interference claim if a party is seeking relief for a noncompensable injury. *Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). A party is entitled to injunctive relief if it demonstrates (1) a cause of action against the

defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Id.*; *see also Pike v. Tex. EMC Mgmt., LLC*, No. 17-0557, 2020 WL 3405812, at *23 (Tex. June 19, 2020).

The GCA established a prima facie case of a wrongful act through evidence that Davis willfully and intentionally interfered with the GCA's performance under the license. As to a probable right of recovery, the GCA was required to allege the existence of a right and present evidence tending to illustrate that the right was being denied. *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Grp., P.A.*, 190 S.W.3d 891, 896–97 (Tex. App.—Dallas 2006, no pet.); *see also Malcom v. Cobra Acquisitions, LLC*, No. 07-19-00405-CV, 2020 WL 2089337, at *5 (Tex. App.—Amarillo Apr. 30, 2020, no pet. h.) (mem. op.). The GCA alleged that it had a right under the license to maintain, operate, and repair the pipeline. Further, it presented evidence that tended to illustrate that the right was being denied. Specifically, the GCA presented evidence that the installation of steel bollards was necessary to protect the pipeline, that Davis had limited the GCA's access to the easement, and that Davis had refused to allow the installation of steel bollards. The GCA, therefore, established a prima facie case that it had a probable right to recovery.

The GCA could establish a prima facie case of imminent harm through evidence of an injury for which there can be no real legal measure of damages or none that can be determined with a sufficient degree of certainty. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925–26 (Tex. App.—Dallas 2006, no pet.); *see also Butnaru*, 84 S.W.3d at 204. The GCA may be entitled to injunctive relief if it establishes that it does not have a legal remedy that provides relief "that is as complete, practical, and efficient to the prompt administration of

justice as is equitable relief." *Millwee-Jackson Joint Venture v. Dallas Area Rapid Transit*, 350 S.W.3d 772, 782 (Tex. App.—Dallas 2011, no pet.); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Evidence that it would take "significant time" to repair the damage from the defendant's conduct may be sufficient to establish that prohibiting the conduct is a more efficient remedy than any award of damages after the conduct. *See Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 353 (Tex. App.—Dallas 2015, no pet.); *see also Devon Energy Prod. Co., LP v. McCarver*, No. 10-15-00002-CV, 2015 WL 4710250, at *2 (Tex. App.—Waco Aug. 6, 2015, no pet.) (mem. op.) ("[T]he applicant has to establish there is no adequate remedy at law for the damages which are sought to be avoided by enjoining the party and thus preventing the damages before they occur."). Further, "business disruptions" may "result in irreparable harm for which a temporary injunction is appropriate." *Occidental Chem. Corp v. ETC NGL Transp., LLC*, 425 S.W.3d 354, 364 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (quoting *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ)); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied).

The GCA pleaded and presented evidence that the pipeline was damaged when heavy equipment was driven over the easement; that it took twenty days to repair the pipeline; that the pipeline was not "bedded" to withstand heavy traffic; that another manhole on the easement was possibly damaged; and that, if the pipeline failed again, the SDWTP could be shut down and wastewater could be discharged into the environment, resulting in an environmental disaster on the property and the loss of sewage operations for Ector County. This evidence was sufficient to establish

21

a prima facie case that a legal remedy of after-the-fact damages would not be as complete, practical, and efficient as preventing the harm from occurring.

We hold that the GCA established by clear and specific evidence a prima facie case for each element of its claim for tortious interference.

As to the GCA's request for declaratory relief, a declaratory judgment is appropriate when a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)); *see also* CIV. PRAC. & REM. § 37.004(a). The GCA pleaded and presented evidence that it had a right under the license to operate, maintain, and repair the pipeline, including the installation of the steel bollards. The pipeline is located on an easement on Appellants' property, and Appellants dispute that the GCA has the right under the license to construct the steel bollards. This dispute will be resolved by the trial court's determination of whether the GCA has the right under the license to install steel bollards on the surface of the easement. Therefore, the GCA established a prima facie case for its declaratory judgment claim. *See Choudhri v. Lee*, No. 01-20-00098-CV, 2020 WL 4689204, at *4 (Tex. App.—Houston [1st Dist.] Aug. 13, 2020, no pet. h.) (mem. op.); *ETX Successor Tyler v. Pridgeon*, 570 S.W.3d 392, 399–01 (Tex. App.—Tyler 2019, no pet.).

We reiterate that our determination that the GCA established a prima facie case that it is entitled to either injunctive or declaratory relief is not a merits determination. *See Stallion Oilfield*, 592 S.W.3d at 215. Rather, as required by the statute, we have considered, based on both the pleadings and the available evidence, whether the GCA established a prima facie case that it was entitled to the requested relief. *See* CIV. PRAC. & REM. § 27.006(a). In our analysis, we have presumed that the facts presented by the GCA are true. *See D Magazine Partners, L.P. v.*

22

*Rosenthal*, 529 S.W.3d 429, 440 n.9 (Tex. 2017); *ETC Tex. Pipeline, Ltd. v. Addison Expl. & Dev., LLC*, 582 S.W.3d 823, 832 (Tex. App.—Eastland 2019, pet. filed). However, before the trial court may grant either injunctive or declaratory relief, the GCA will be required to establish that it is entitled to the requested relief based on the credible evidence presented to the trial court and on the trial court's construction of the controlling documents.

We overrule Appellants' second issue to the extent that Appellants assert that the trial court erred when it determined that the TCPA did not apply to the GCA's claims for negligence and for violation of the Water Code and Appellants' third issue to the extent that Appellants contend that the trial court erred when it found that the GCA established by clear and specific evidence a prima facie case for each essential element of the GCA's claim for tortious interference and its request for declaratory relief. As previously discussed, we need not address the remainder of Appellants' second and third issues. *See* TEX. R. APP. P. 47.1.

## C. Affirmative Defenses

In their fourth issue, Appellants contend that the trial court erred when it denied the motion to dismiss because they established each essential element of a valid defense to the GCA's claims by a preponderance of the evidence. *See* CIV. PRAC. & REM. § 27.005(d). Appellants specifically argue that they established (1) that an independent contractor operated the machinery on the easement and Appellants cannot be held vicariously liable for the actions of the independent contractor; (2) that Davis, as a member of Motley Capital, cannot be held individually liable for the acts of Motley Capital; and (3) that the GCA was not entitled to declaratory relief because the GCA did not have the right under the license to construct steel bollards on the easement.

We question whether Appellants preserved this argument for our review. Appellants did not argue in their motion to dismiss that the GCA's claims should be

dismissed based on a defense. At 4:30 p.m. on the day before the hearing, which was the Labor Day holiday, Appellants filed a reply to the GCA's response to the motion to dismiss. The reply was file-marked at 12:00 a.m. on the day of the hearing. In their reply, Appellants argued that they had established a valid defense (1) to the GCA's claims for negligence and for violation of the Water Code because an independent contractor operated the heavy machinery that allegedly damaged the pipeline and (2) to the GCA's tortious interference claim and request for declaratory relief because the license did not give the GCA the right to install steel bollards and because the GCA failed to establish that the installation of the bollards was reasonably necessary and minimally burdensome. The trial court stated at the hearing on the motion to dismiss that it was not aware that the reply had been filed and made no findings pertaining to Appellants' defenses. *See* TEX. R. APP. P. 33.1(a).

However, even if Appellants preserved this issue for our review, their arguments are without merit. Appellants' defense that they are not vicariously liable for the conduct of an independent contractor applies only to the GCA's claims for negligence and for violation of the Water Code. We have held that neither of these claims is subject to the TCPA.

Appellants' contention that Davis is not individually liable for the acts of Motley Capital was not raised in the trial court in either the motion to dismiss or in the reply. The sole mention of this asserted defense was a statement in Davis's affidavit that was attached to the motion to dismiss that Davis was the sole member and president of Motley Capital and that he "only acted through Motley Capital" when "interacting" with the GCA. At the hearing, Appellants' counsel raised this issue in passing when he argued in two sentences that the GCA had sued Davis in his personal capacity, "even though [the GCA had] made no allegations against [Davis] in his personal capacity," and that each of the actions complained about in

24

the case "were taken in [Davis's] capacity as a member and president of Motley." Appellants' counsel then went through the claimed defenses "quickly" and did not mention that Davis contended that he was not individually liable.

It is questionable whether the trial court even realized that Davis had asserted that he was not individually liable for Motley Capital's actions. However, even if it was aware of Davis's contention, the trial court found that the GCA established by clear and specific evidence that Davis willfully and intentionally interfered with the license and that Davis's interference proximately caused an injury. This finding was supported by Harris's statements in his affidavit that Davis refused to allow the GCA to install steel bollards on the easement, that Davis's refusal to allow the construction interfered with the GCA's right to maintain the pipeline, and that Davis's refusal left "the manholes and Pipeline open to further destruction and potential harm." On this record, we cannot conclude that the trial court erred if it determined that Davis failed to establish his affirmative defense by a preponderance of the evidence.

Finally, Appellants assert as a defense to the GCA's tortious interference claim and request for declaratory relief that the GCA does not have a right under the license to construct steel bollards on the easement and that the GCA did not produce any evidence that the installation of the bollards was reasonably necessary and minimally burdensome on Appellants. However, the GCA presented evidence that it had a right under the license to maintain and operate the pipeline and that its engineer recommended that steel bollards be placed around every manhole on the easement in order to protect the pipeline. Whether the GCA's right to maintain and operate the pipeline encompasses the right to erect steel bollards; whether the erection of steel bollards is reasonably necessary to maintain and operate the pipeline; and whether the GCA is required to maintain and operate the pipeline in the manner that is most minimally burdensome on Appellants are all issues that

25

should be determined by the trial court, if necessary, in either a trial or a summary judgment proceeding. *See Stallion Oilfield*, 592 S.W.3d at 215.

We overrule Appellants' fourth issue.

*This Court's Ruling*

We hold that the trial court had jurisdiction over Appellants' TCPA motion to dismiss. We affirm the trial court's order in which it denied the motion to dismiss, and we remand the cause to the trial court for further proceedings.


KEITH STRETCHER

JUSTICE


September 11, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[7]

Willson, J., not participating.

---

[7]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.